# IN RE REAL ESTATE TAXES OF NORTHERLY CENTRE CORPORATION v. COUNTY OF RAMSEY.

248 N. W. 2d 923.

December 23, 1976—No. 46316.

*Oppenheimer, Wolff, Foster, Shepard & Donnelly, Craig W. Gagnon,* and *Thomas W. Anderson,* for appellant.

*William B. Randall,* County Attorney, and *Thomas M. Quayle* and *Steven C. DeCoster,* Assistant County Attorneys, for respondent.

Heard before Todd, MacLaughlin, and Yetka, JJ., and considered and decided by the court en banc.

MacLaughlin, Justice.

This is an appeal by petitioner, Northerly Centre Corporation, hereafter Northerly Centre, from a judgment of the district court finding the Ramsey County assessor's 1973 valuation of petitioner's real estate to be excessive and reducing the value to the sum of $4,800,000. It is Northerly Centre's belief that the trial court did not sufficiently reduce the valuation of its property and that the trial court's valuation is not reasonably supported by the evidence. Because we find that there is sufficient evidence to support the trial court's conclusion, we affirm.

Northerly Centre filed a petition in Ramsey County District Court seeking a reduction in the assessor's valuation for the year 1974 on certain real estate in Ramsey County known as the "Skyway Building." The Ramsey County assessor had determined that the fair market value of the property on January 2, 1973, was $5,934,500 whereas petitioner alleged that the actual market value was not more than $3,500,000.

The Skyway Building is located in the central business district of St. Paul, on the north half of two blocks between Fifth and Sixth Streets. It is a general-purpose commercial structure containing retail and office space as well as commercial parking facilities and is unique in that it extends from Capital Plaza near Wabasha Street, easterly by occupied air rights over Cedar Street to Minnesota Street. The two-story structure is contiguous to the Northwestern National Bank of St. Paul, hereafter the Bank, providing covered access to the latter's open banking floor on the Skyway level.[1]

The Skyway Building was constructed as a component of an urban renewal plan for the development of downtown St. Paul on land originally acquired from the St. Paul Housing and Redevelopment Authority. Improvements to the site were built by Eljay Partnership whose general partner was L. J. Sheridan Co., a Chicago developer. When Eljay encountered financial difficulties in the early development of the project, it secured a second mortgage held by the Bank, in addition to the first mortgage already held by the Prudential Insurance Company.

By January 1974 Eljay was in default on all of its principal obligations. The Bank, as a tenant of certain of the Skyway Building offices, believed that it was closely identified with the complex by the public and feared that the financial failure of the Skyway Building would reflect adversely upon it. Therefore the Bank used Northerly Centre, a related corporation, to acquire

---

[1] The Skyway system is designed to provide overhead, covered movement of pedestrian traffic from one building to another in the downtown area of St. Paul.

complete ownership of the building and land from Eljay. Northerly Centre paid off the amounts owed on the first and second mortgages, as well as the delinquent taxes and penalties, and assumed the first mortgage, which was almost $4,000,000. Total cost of the acquisition was approximately $7,625,000.

The market value of the Skyway Building was originally set by the assessor at approximately $5,900,000, and Northerly Centre, after acquiring ownership, applied for abatement of the assessments based on that market value for the years 1970, 1971, and 1972. Although not successful in obtaining a change for 1970, Northerly Centre did obtain reduced assessments for the years 1971 and 1972, based on a reduction in the market value of the property in the amount of $600,000 for 1971 and an additional $600,000 in 1972, during which periods of time the former owners were trying to "rent out" the building. However, since abatements for one year have no effect on a determination of the market value in subsequent years, the county apparently did not feel bound beyond the abatements for 1971 and 1972.

At trial, testimony pertaining to the value of the Skyway Building was offered by real estate appraisers for Northerly Centre and for the county, with, as usual, widely differing opinions expressed.

Dayton Jenks, supervisor of the commercial-industrial property evaluation division of the county assessor's office, testified for the county that the value of the property as of January 2, 1973, was $5,933,500. Jenks testified that he had taken into account the cost, location, quality of construction, and comparable value of like property, and that he had employed the three recognized approaches to valuation of real property: cost, market data, and income.[2] Jenks concluded that the property should be

---

[2] Under the "cost approach," one determines the cost of constructing the building and subtracts an amount for depreciation to determine the building's present value and then adds the value of the underlying land. Under the "income approach," one determines the income that the property should reasonably be expected to generate, subtracts the expenses

valued by the cost approach since the market data approach could be related only to a single recent sale in downtown St. Paul and since sufficiently detailed income data had not been available to him.

Richard Parranto, the county's independent appraiser, testified that in his opinion the value of the property, using the cost approach, was $6,000,000; using the market data approach, was $6,300,000; and using the income approach was $5,250,000.[3] He stated that the cost and market data approaches best expressed value in regard to the Skyway Building and concluded that the fair market value of the property was $6,250,000.

Petitioner presented an extensive report prepared by William Muske, an independent appraiser. Muske did not use the market data approach at all because of the absence of meaningful comparable sales, and using the cost approach he arrived at a value of $4,130,000. Muske concluded that in any case the cost and market data approaches to valuation should be given little weight since income properties like the Skyway Building are bought and sold in reliance upon the net income they can produce for their owner-investors capitalized at a reasonable rate of return. After analysis of the actual and potential rental income and operating expenses of the Skyway Building, Muske applied a 10-percent capitalization rate to the net "economic income" and concluded that the income approach to value, based on economic income and expenses, yielded a valuation of from $3,320,000 to $3,690,000 and that the overall fair market value was $3,500,000.

The trial court, in a complete and extensive memorandum,

---

that should reasonably be incurred, and capitalizes this net "economic" income at a rate of capitalization which investors would reasonably expect to obtain. Under the "market data approach," one surveys the market to determine if there have been a sufficient number of recent voluntary sales of similar property to provide dependable information as to the selling rate of "comparable property."

[3] Parranto's estimates based on the market data approach and the income approach include $1,050,000 allocated to "air rights."

stated that return to investors must be "a prime consideration in valuation" of the building, but went on to observe that "in the current time of stress in the real estate market in downtown St. Paul, a fact readily observable to even the casual visitor, other factors such as cost must also be considered" in arriving at fair market value. Expressing dissatisfaction with the county's "obvious inordinate reliance on cost and failure to account for income data" and with Northerly Centre's "almost exclusive reliance on income as the only source of valuation," the trial court determined that the fair market value of the property was $4,800,000.

The sole issue on appeal is whether the trial court's valuation of the subject property is reasonably supported by the evidence as a whole.

There is no substantial dispute regarding the underlying facts which comprise the basis for the expert opinions as to the fair market value of the Skyway Building. The basic disagreement concerns the means by which the trial court arrived at a determination of the fair market value and the proper weight to be given to the various factors which comprise the basis for the three approaches to valuation of real property.

Northerly Centre argues (a) that the income approach is the only appropriate method to use in valuation of the property in question, and that the trial court essentially accepted that proposition, and (b) that the trial court erred in placing emphasis in his valuation on "the current time of stress in the real estate market in downtown St. Paul, a fact readily observable to even the casual visitor," inasmuch as there is nothing in the record to support that conclusion, and none of the expert witnesses used that factor in arriving at value.

Minn. St. 273.11, subd. 1, mandates that—

"* * * all property shall be valued at its market value. In estimating and determining such value, the assessor shall * * * value each article or description of property by itself, and at such

sum or price as he believes the same to be fairly worth in money."[4]

Furthermore, § 273.12 imposes on the assessor and board, in estimating and determining the value of lands for real estate tax purposes, the duty "to consider and give due weight to every element and factor affecting the market value thereof * * *." See, In re Petitions of Hedberg & Sons Co. v. County of Hennepin, 305 Minn. 80, 90, 232 N. W. 2d 743, 750 (1975); Independent School Dist. No. 99 v. Commr. of Taxation, 297 Minn. 378, 384, 211 N. W. 2d 886, 889 (1973).

In Schleiff v. County of Freeborn, 231 Minn. 389, 394, 43 N. W. 2d 265, 268 (1950) this court stated:

"It is clear from the foregoing that the duty rests upon the assessor to determine the sale or market value of the property to be assessed, and that in determining what such market or sale value is, the duty rests upon him to take into consideration *every element and factor affecting such valuation.* These factors, we have held, include 'Location, cost of construction, cost of reproduction, purpose for which building was used, the intrinsic value or worth of the building, the price at which the owner is willing to sell, the price at which buyers who may use the property for some purpose are willing to buy, the price at which similar property, if any, has sold, and many other things * * *.' In re Delinquent Real Estate Taxes, Waseca County, 182 Minn. 543, 544, 235 N. W. 22." (Emphasis in original.)

See, also, Independent School Dist. No. 99 v. Commr. of Taxation, 297 Minn. 378, 211 N. W. 2d 886 (1973); Real Estate Tax Assessments of Silver Lake Apts. Inc. v. County of Olmsted, 295 Minn. 548, 204 N. W. 2d 415 (1973); Crossroads Center, Inc. v. Commr. of Taxation, 286 Minn. 440, 176 N. W. 2d 530 (1970);

---

[4] Minn. St. 272.03, subd. 8, provides: " 'Market value' means the usual selling price at the place where the property to which the term is applied shall be at the time of assessment; being the price which could be obtained at private sale and not at forced or auction sale."

Alstores Realty, Inc. v. State, 286 Minn. 343, 176 N. W. 2d 112 (1970).

A trial court's findings of fact in tax proceedings, like those in ordinary civil actions, must be sustained upon review unless they are clearly erroneous in the sense that they are not reasonably supported by the evidence as a whole. Real Estate Tax Assessments of Silver Lake Apts. Inc. v. County of Olmsted, *supra*; Wagner v. Commr. of Taxation, 258 Minn. 330, 104 N. W. 2d 26 (1960). A finding can be held to be clearly erroneous if the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. In re Estate of Balafas, 293 Minn. 94, 198 N. W. 2d 260 (1972).

Assuming there is conflicting opinion testimony, it is not mandatory upon the trier of fact to accept any particular valuation approach as the sole basis for determining market value. Schleiff v. County of Freeborn, 231 Minn. 395, 43 N. W. 2d 268 (1950). See, also, Village of Aurora v. Commr. of Taxation, 217 Minn. 64, 14 N. W. 2d 292 (1944). Therefore, the trial court could properly have found in respect to the Skyway Building that the "county's obvious inordinate reliance on cost" was inappropriate as applied to the facts in this case. For example, it appears the county placed considerable emphasis upon the total amount paid by Northerly Centre for the property even though the county's appraiser stated that the sale of the property to Northerly Centre for $7,000,000 should not be "considered an arm's length transaction."

Further, the trial court was not required to value the property solely through the income approach. In fact, the trial court stated that it was not satisfied with Northerly Centre's almost exclusive reliance on income as the only source of valuation. We agree with Northerly Centre's argument that the trial court inappropriately referred to stress in the downtown real estate market as a factor to be used by the court in evaluating the property. There was no opportunity given to Northerly Centre to rebut the trial court's judicial notice of those circumstances, and there

is nothing in the record to support any reliance by the trial court on that factor. We have held, however, that unjustified judicial notice is harmless error where the decisive issue as determined by the trial court is clearly sustained by the evidence. Brachmann v. Netzinger, 293 Minn. 405, 196 N. W. 2d 616 (1972).

We have concluded that there is sufficient evidence in the record to sustain the determination of value made by the trial court. As we stated in Halla v. County of Hennepin, 306 Minn. 533, 534, 237 N. W. 2d 348, 349 (1975):

"With respect to the reasonableness of the trial court's valuation, it is apparent that, * * * the trial court, confronted with conflicting appraisals of the assessor and the owners, neither of which was acceptable, concluded that a compromise in valuation was required by the evidence. We are persuaded that this compromise in valuation has evidentiary support and is not unreasonable or clearly erroneous."

So, too, in this case there is evidentiary support for the valuation. If the approaches to valuation other than income are considered, it is clear that the trial court was well within the perimeters of the opinions given by the real estate appraisers. Even if we restrict our review to opinions of valuation based upon the income approach the trial court's determination is supported by the evidence. Appraiser Parranto, testifying for the county, stated that the valuation of the subject property through the income approach was $5,250,000. Even though Northerly Centre's appraiser arrived at a lower figure using the income approach, it is clear that the trial court's determination cannot be construed to be clearly erroneous because there is evidentiary support for its conclusion. Therefore, we hold that the district court's determination of value must be affirmed.

Affirmed.