DeZURIK CORPORATION, Petitioner, Relator,

v.

COUNTY OF STEARNS, Respondent.

No. C2–93–1182.

Supreme Court of Minnesota.

June 24, 1994.

Daniel J. Biersdorf, Daniel J. Biersdorf & Associates, Minneapolis, for relator.

Gerald W. VonKorff, Rinke–Noonan, St. Cloud, for respondent.

## OPINION

GARDEBRING, Justice.

This case asks us to review a fair market value determination made by the Minnesota Tax Court. DeZurik Corp. (relator) sought reductions in the assessed value for its manufacturing facility, located in Stearns County, for the assessment dates of January 2, 1990, 1991, and 1992. At trial, the county claimed the value for each of the three years should be $4,035,000, while relator claimed the value should be $2,000,000. The tax court found the value to be $3,750,000 for the three years in question. Relator appeals this valuation.

DeZurik Corp., a manufacturer of industrial valves, is located in Sartell, Minnesota, on a parcel of land of approximately 14.49 acres. The property is the site of a foundry, machine shop, and manufacturing, assembly and painting facilities. The original building was constructed in 1941, and at least 18 additions were added at various times from 1950 through 1983. Buildings on the property total approximately 334,000 square feet. The facility is primarily configured as a single-story manufacturing facility, although a small portion of the space is located on the second and third floors.[1]

---

1. The property has many structural features designed for foundry use, such as differing ceiling heights, large pits which house furnaces, extra ventilation to make up for the heat lost through dust collectors, and cranes for handling heavy steel. Other features of the plant detract from its

In 1989 Stearns County assessed relator's property at approximately $4,600,000. In March of 1990 (prior to the time that the January 2, 1990 estimated market value had been fixed by the assessor) relator hired Cushman and Wakefield of Connecticut, Inc., to determine the value of the property. Relator provided the county with the appraisal (Cushman appraisal) which estimated the value of the property to be approximately $4,000,000. After reviewing the Cushman appraisal, the county assessor established an estimated market value of $3,990,900 for the 1990 assessment, an amount also used for the 1991 and 1992 assessments. Relator appealed this valuation to the tax court which determined the market value of the facility to be $3,750,000 for each of the three years.

■ Decisions of the tax court are accorded the same finality and deference as those of the district court. Minn.Stat. § 271.01, subd. 5 (1992); *Matter of McCannel*, 301 N.W.2d 910, 919 (Minn.1980). Review of tax court determinations is generally limited to determining whether there is sufficient evidence to support the tax court's decision. *Red Owl Stores, Inc. v. Commissioner of Taxation*, 264 Minn. 1, 9, 117 N.W.2d 401, 405 (1962); *Western Auto Supply Co. v. Commissioner of Taxation*, 245 Minn. 346, 366, 71 N.W.2d 797, 810 (1955). This court will not disturb the tax court's findings on appeal where sufficient evidence supports the decision. *Montgomery Ward & Co. v. County of Hennepin*, 482 N.W.2d 785, 788 (Minn. 1992). Further, it is not mandatory that the trier of fact accept any particular valuation approach as the sole basis for determining

market value. *Northerly Centre Corp. v. County of Ramsey*, 248 N.W.2d 923, 927 (Minn.1976) (citing *Schleiff v. County of Freeborn*, 231 Minn. 389, 395, 43 N.W.2d 265, 268–69 (1950)).

■ In *Matter of McCannel*, this court defined " 'market value,' the basis for all assessment valuation, * * * [as] an attempt to create a fictitious sale of the subject property by assuming an owner willing to sell and a buyer desiring to buy." 301 N.W.2d 910, 924 (Minn.1980). In other words "market value" is the value the property would sell for on that date in a sale from one not required to sell to one not required to buy. *Schleiff*, 231 Minn. at 395, 43 N.W.2d at 270. In the event that there is no actual buyer desiring to purchase the property for continuation of its special use, the property's highest and best use as a special purpose property must still be considered for valuation purposes. *McCannel*, 301 N.W.2d at 924. While the property in this case was not found to be special purpose property, it does have many features adapted to its use as a foundry, and the presence of those unusual features was the source of significant disagreement at the trial.

■ At trial, three appraisals were submitted into evidence: the Cushman appraisal;[2] a second valuation by relator (the Leirness appraisal) which valued the property at $2,000,000, and an appraisal prepared for the county by Peter Patchin and Associates (the Patchin appraisal), which valued the property at $4,035,000. All three appraisals made use of the three standard approaches to market value,[3] but because of the unreliability of the

---

value for use as a foundry. The plant contains a proportion of office space which is larger than a typical manufacturing plant, because the facility houses the corporate offices. Further, the location of the facility in a residential area places it under greater noise and environmental restrictions than would be the case if it were located in an industrial area.

2. Relator moved to exclude the Cushman appraisal from evidence, claiming that it was offered as a part of a settlement agreement with the county, and therefore, not admissible. The tax court denied the motion. We believe that there was sufficient evidence before the tax court to support the valuation even without the admission of the Cushman evidence. Therefore, we decline to rule on this issue.

3. There are three basic approaches to determining the market value of real estate: market data, cost, and income. Under the market data approach, the market is surveyed to determine if there have been a sufficient number of recent voluntary sales of similar property to provide dependable information as to the selling rate of comparable property. Under the cost approach, the cost of constructing the building less depreciation is determined and added to the value of the underlying land. The cost approach is based on the proposition that an informed purchaser would pay no more than the cost of producing a substitute property with the same utility as the subject property. Under the income approach, the income that the property should reasonably be expected to generate less the expenses that

data, the tax court did not consider the income approach. Further, the tax court did not rely solely on any of the three appraisals, nor any single method of valuation, but looked to all three appraisals in arriving at a fair market value of $3,750,000 for each of the three years at issue.

The parties in this matter disagree as to the highest and best use of the property, and therefore, as to the approach taken to both the market and cost valuation methods. Relator claims the highest and best use is as a general purpose industrial facility. From that premise, relator argues that the appropriate hypothetical sale scenario to utilize in determining the fair market value of the property is one in which the real estate is sold alone without any business in place. Relator characterized this as the "liquidation sale" scenario and it was the basis for the Leirness appraisal. In his appraisal, Leirness assumed that the present owner of the property would determine that it no longer needed the subject property and that it would then be sold to a buyer who would use it for whatever use the marketplace would find acceptable, not necessarily a foundry and valve manufacturing facility.

In contrast, Stearns County adopted a more traditional approach to valuation of property. Recognizing that the property has more value when put to its intended use, and that the foundry has economic value, the county's appraiser, Patchin assumed the market price should reflect what a purchaser would pay for property adapted to foundry purposes, not the price likely to be paid by a buyer for general manufacturing and warehouse purposes. The county argues this is the appropriate approach where no evidence indicates DeZurik was under any pressure to close the plant, or that the facility had lost its value as a foundry and valve manufacturing facility.

reasonably should be incurred is determined and then capitalized at a rate of capitalization that investors would reasonably expect to obtain. *Federal Reserve Bank of Minneapolis v. County of Hennepin,* 372 N.W.2d 699, 700 (Minn.1985); *Northerly Centre Corp. v. County of Ramsey,* 311 Minn. 335, 337 n. 2, 248 N.W.2d 923, 925 n. 2 (1976).

In determining fair market value the tax court first looked to the cost approach. Under this method, the Leirness appraisal placed the value of the property at $2,200,000 and the Patchin appraisal at $4,000,000. The tax court found neither the Leirness cost approach nor the Patchin cost approach fully acceptable. Rather, following its own well-established practice, the tax court selected an overall depreciation and obsolescence rate of 65%,[4] taking into account the significant functional obsolescence caused by the unusually large percentage of office space, the large furnace pits, the differing ceiling levels and other physical characteristics of the plant. Applying that factor to the $12,500,000 replacement cost utilized in both appraisals, the tax court arrived at a depreciated improvement value of $3,750,000. Then, adding the well-documented calculation of land value in the Patchin appraisal, in the amount of $360,000, the tax court determined the market value of the property to be $4,110,000, using the cost approach. Evidence in the record fully supports this calculation.

The court next considered evidence of comparable sales to determine the property's value under the market data approach. The court noted the differences in the approaches of the various appraisers: both Patchin and Cushman and Wakefield gave greatest weight to comparable sales in which the present use being made of the property was continued, while Leirness, consistent with the "liquidation sale" approach, looked solely to vacant, general purpose industrial buildings. After considering all comparable sales, the court found the value per square foot to be $11.00, for a total market approach value of $3,674,000.

In its overall valuation process, the tax court gave the greatest weight to the market approach and some weight to the cost approach in arriving at a fair market value of $3,750,000. In this matter, the tax court was

4. Although the tax court indicated that it chose an overall depreciation and obsolescence rate of 65%, we note that the rate reflected in the calculation itself is approximately 70%. This does not change our view that the evidence is adequate to support the tax court's decision.

presented with widely differing assessments of value, based on divergent theories. While the tax court agreed with the Leirness appraisal that the highest and best use was for a general purpose industrial facility, it took this change of use into account through its calculation of the obsolescence rate. Further, the tax court did not err in refusing to determine the value of the facility solely on the basis of a liquidation sale as relator's appraiser had done. The tax court properly considered the various approaches presented in the evidence and based on its extensive experience in this area, made a proper, well-founded decision as to valuation. There is sufficient evidence in the record to support its decision, and we affirm.

Affirmed.