915 P.2d 1349

In the Matter of the TAX APPEAL
OF COUNTY OF MAUI,
Appellant/Appellee,

v.

KM HAWAII INC., Appellee/Appellant.

No. 18292.

Supreme Court of Hawai'i.

April 30, 1996.
Reconsideration Denied May 16, 1996.

Brian T. Moto, Deputy Corporation Counsel, on the briefs, Wailuku, Maui, for appellant/appellee.

Donna Y.L. Leong of Cades, Schutte Fleming & Wright, on the briefs, Honolulu, for appellee/appellant.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

KLEIN, Justice.

The County of Maui (County) appeals from the Tax Appeal Court's judgment concerning real property tax assessments against KM Hawaii Inc. (Taxpayer) for the 1990, 1991 and 1992 tax years.[1] The issue presented in this appeal is whether the Tax Appeal Court has jurisdiction under Hawai'i Revised Statutes (HRS) chapter 232, "Tax Appeals" (1993),[2] to award a judgment setting the

---

1. By order dated April 15, 1992, pursuant to the parties' stipulations, the Tax Appeal Court consolidated tax appeal case nos. 2732, 2801 and 2890. Respectively, these cases covered the 1990–1991, 1991–1992, and 1992–1993 fiscal years.

2. The relevant provisions of HRS chapter 232 provide in pertinent part:

§ 232–11 **Court of record; general duties, powers, seal.** The tax appeal court shall hear and determine appeals as provided in section 232–16 or 232–17. It shall ... have *jurisdiction throughout the State with respect to matters within its jurisdiction;* and shall have the power and authority *in the manner provided in*

*section 232–13,* to decide all questions of fact and all questions of law, including constitutional questions, involved in any such matters, without the intervention of a jury....

§ 232–13 **Hearing de novo; bill of particulars.** *The hearing before the tax appeal court shall be a hearing de novo.* Irrespective of which party prevails in proceedings before a state board of review, or any equivalent administrative body established by county ordinance, the assessment as made by the assessor ... shall be deemed prima facie correct. Each party shall have the right to introduce, or the tax appeal court, of its own motion, may require the taking of such evidence in relation to the subject pending as in the court's discretion

valuation of real property for tax purposes in an amount lower than that claimed by the Taxpayer in its notice of appeal to the Tax Appeal Court.

## I. BACKGROUND

The County assessed the Taxpayer's property, known as the "Hyatt Regency Maui" (Subject Property) as follows:

| Tax Year | Building Value | Land Value | Total Assessed Value |
|---|---|---|---|
| 1990 | $171,150,000 | $26,456,800 | $197,606,800 |
| 1991 | $171,150,000 | $32,068,800 | $203,218,800 |
| 1992 | $171,150,000 | $32,068,800 | $203,218,800 |

The Taxpayer filed notices of appeal directly to the Tax Appeal Court, alleging violations of HRS §§ 232–3(1), –3(2), and –3(4),[3] and claiming the following values:

| Tax Year | Building Value | Land Value | Total Assessed Value |
|---|---|---|---|
| 1990 | $ 97,800,000 | $24,051,600 | $121,851,600 |
| 1991 | $130,000,000 | $30,000,000 | $160,000,000 |
| 1992 | $111,249,000 | $32,068,800 | $143,319,000 |

In tax appeal case number 2732, the Taxpayer included a statement indicating that "[t]he approximate taxes in controversy set forth herein, based on the supposed applicable real property tax rates, are reasonable estimates, the precise amounts of which will be proven at trial." [4]

 Eight days prior to trial, the County produced documents revealing that it used a comparable sales or market data method (Market Data Approach) of valuation for the

---

may be deemed proper. The court, in the manner provided in section 232–16, shall determine all questions of fact and all questions of law, including constitutional questions, involved in the appeal.

*The jurisdiction of the tax appeal court is limited to the amount of valuation or taxes, as the case may be, in dispute as shown on the one hand by the amount claimed by the taxpayer or county and on the other hand by the amount of the assessment,* or if increased by the board, or equivalent county administrative body, the assessment as so increased.

**§ 232–16 Appeal to tax appeal court.....**

*The notice of appeal to the tax appeal court shall be sufficient if it meets the requirements prescribed for a notice of appeal to the board of review and may be amended at any time;* provided that it sets forth the following additional information, to wit:

A brief description of the property involved in sufficient detail to identify the same and the valuation placed thereon by the assessor.

. . . .

An appeal to the tax appeal court shall bring up for review all questions of fact and all questions of law, including constitutional questions, *necessary to the determination of the objections raised by the taxpayer or county in the notice of appeal.*

(Emphases added.) The requirements for a notice of appeal to the board of review are minimal: "any such notice, however informal it may be, identifying the assessment involved in the appeal and stating the grounds of objection to the assessment shall be sufficient.... Any notice of appeal may be amended at any time prior to the board's decision; provided the amendment does not substantially change the dispute." HRS § 232–15 (1993). HRS § 232–17, which governs appeals from boards of review to the tax appeal court, is not relevant to the instant case.

**3.** HRS § 232–3 provides in pertinent part:

**Grounds of appeal, real property taxes.** In the case of a real property tax appeal, no taxpayer or county shall be deemed aggrieved by an assessment, nor shall an assessment be lowered or an exemption allowed, unless there is shown:

(1) Assessment of the property exceeds by more than twenty per cent the ratio of assessment to market value used by the director of taxation as the real property tax base, or

(2) Lack of uniformity or inequality, brought about by illegality of the methods used or error in the application of the methods to the property involved, or

. . . . .

(4) Illegality, on any ground arising under the Constitution or laws of the United States or the laws of the State (in addition to the ground of illegality of the methods used, mentioned in clause (2)).

The Taxpayer also cited Maui County Code (MCC) §§ 3.48.605(A), (B), and (D), which are substantially similar to the provisions in HRS § 232–3, *supra*, but which only apply to appeals before the board of review of Maui County.

**4.** The Taxpayer included a similar statement in tax appeal case number 2801, but revised this statement in tax appeal case number 2890 to provide that:

The approximate taxes in controversy set forth herein, are based on (1) an estimate of the valuation of the property that will be claimed by the Taxpayer and (2) the real property tax rates for the preceding tax year, since the rates for the next tax year have not been determined. The approximate taxes in controversy are reasonable estimates, the precise amount of which will be proven at trial.

Although HRS § 232–16 provides that the notice of appeal "may be amended at any time[,]" the Taxpayer in the instant case never formally amended its notices of appeal.

Subject Property, as opposed to the replacement cost approach (Cost Approach) used for certain other hotels in the County.[5] Subsequently, the Taxpayer submitted a trial memorandum asserting that its evidence would show the following fair market values for the Subject Property:

| Tax Year | Building Value | Land Value | Total Assessed Value |
|---|---|---|---|
| 1990 | $126,043,200 | $26,456,800 | $152,500,000 |
| 1991 | $118,731,200 | $32,068,800 | $150,800,000 |
| 1992 | $115,031,200 | $32,068,800 | $147,100,000 |

The land valuations alleged in the Taxpayer's trial memorandum were the same as the County's assessed land values and, at trial, the Taxpayer agreed that those values were reasonable estimates of the fair market value of the land for the respective tax years.

As provided in the documents produced prior to trial, the County's assessor testified that the County used the Market Data Approach to assess the buildings on the Subject Property, which was classified as a "Class A" resort hotel.[6] He further testified that the County used the Cost Approach for "mom and pop-type hotels" and resort hotels that were "brand new." According to the assessor, the Cost Approach values of various resort hotels, including the Subject Property, were too low, and the Market Data Approach

values more accurately reflected recorded sales prices of resort hotels in the county.[7]

The Taxpayer's expert testified regarding his appraisal of the total (i.e., land and buildings combined) fair market value of the Subject Property. The values to which the Taxpayer's expert testified were identical to those alleged by the Taxpayer in its trial memorandum. In addition, by stipulation of the parties, the Cost Approach values for the Subject Property as calculated by the County were admitted into evidence.

On July 6, 1994, over the County's objections, the Tax Appeal Court entered its findings of fact (FOF), conclusions of law (COL), and judgment in favor of the Taxpayer. The court's FOF # 36 provided that:

> The County's use of the market data approach for selected hotels and the cost approach for the remaining hotels to determine the fair market value of the hotel buildings did not achieve, as far as possible, uniform and equalized assessments. To achieve uniform and equalized assessments for the Tax Years, the building valuations of the Subject Property should be based on the County's values that were derived from its application of the cost approach.

---

5. We agree with the Supreme Court of Minnesota's description, in *Northerly Centre Corp. v. County of Ramsey*, 311 Minn. 335, 248 N.W.2d 923 (1976), of the three recognized approaches to valuation of real property:

> Under the "cost approach," one determines the cost of constructing the building and subtracts an amount for depreciation to determine the building's present value and then adds the value of the underlying land. Under the "income approach," one determines the income that the property should reasonably be expected to generate, subtracts the expenses that should reasonably be incurred, and capitalizes this net "economic" income at a rate of capitalization which investors would reasonably expect to obtain. Under the "market data approach," one surveys the market to determine if there have been a sufficient number of recent voluntary sales of similar property to provide dependable information as to the selling rate of "comparable property."

*Id.* 248 N.W.2d at 925 n. 2. *See also Rebelwood, Ltd. v. Hinds County*, 544 So.2d 1356 nn. 5–7 (Miss.1989) (summarizing the basic steps involved in each approach); Joan Youngman, *Le-*

*gal Issues in Property Valuation and Taxation: Cases and Materials* 34 (1994) ("It is somewhat misleading to call the comparable sales approach the 'market' approach, because all three approaches are designed to estimate current market value.").

6. The assessor testified that the County classified hotels by quality based on hotel market studies prepared by the County for each tax year. He further testified that he compared the County's hotel ratings with those of the American Automobile Association ("AAA") at the end of 1992 and concluded that the County's hotel studies were adequate.

7. The assessor testified that application of the Market Data Approach to resort hotels other than the Subject Property produced valuations "quite close" to the recorded sales prices of those hotels. With respect to the Subject Property, however, the County's Market Data Approach valuation of $210,000 per room was significantly lower than the actual sales price of the Subject Property in 1988 (over $310,000 per room), but was more accurate than the Cost Approach valuation.

Accordingly, the court set the valuations of the Subject Property as follows:

| Tax Year | Building Value | Land Value | Total Assessed Value |
|---|---|---|---|
| 1990 | $ 85,665,500 | $26,456,800 | $112,122,300 |
| 1991 | $ 88,879,900 | $32,068,800 | $120,948,700 |
| 1992 | $ 93,093,400 | $32,068,800 | $125,162,200 |

The building values set by the court reflected the Cost Approach values for the Subject Property as calculated by the County, which had been stipulated to by the parties.

The Tax Appeal Court also made extensive FOFs concerning discrepancies in the County's assessment practices and reached, inter alia, the following COLs:

4. The assessed valuations of the Subject Property lack uniformity and equality because the County did not use appropriate systematic methods suitable for mass valuation to determine the fair market value of the real property of the Subject Property when it:

 a. used the market data approach on a mass appraisal basis to determine the fair market value of the buildings on the Subject Property . . . ; and

 b. failed to separate the value of the real property of the Subject Property from the going-concern value of the Subject Property.

Each of these actions constitute an inappropriate, unsystematic method of appraisal for mass valuations.

5. The assessed valuations of the Subject Property lack uniformity and equality because the County, in using the market data approach to determine the assessed value of the buildings of selected hotels and the cost approach to determine the assessed value of buildings of the remaining hotels, failed to select and apply methods that would, as far as possible, result in uniform and equalized assessments.

6. The assessed valuations of the Subject Property lack uniformity and equality because the County erroneously applied the market data and cost approaches to the hotels listed on the Hotel Charts when it:

 a. created and used a rating system that was not supported by specific, relevant, and accurate data;

 b. based the classification of the hotels on the rating system but failed to systematically correlate the rating system with the classification system;

 c. failed to provide credible evidence to support its quantitative adjustments for market conditions and for furniture, fixtures, and equipment;

 d. failed to appropriately adjust the sale prices of the Comparison Properties for changes in income, financing terms, and non-realty components; and

 e. applied the furniture, fixture, and equipment adjustment to those hotels that were valued using the cost approach only.

. . . .

9. The County's assessments discriminate against Taxpayer by requiring payment of more than the Subject Property's allocable share of the total real property tax burden in violation of the respective equal protection clauses of the U.S. and State Constitutions.

Following entry of the Tax Appeal Court's judgment, the County filed a timely notice of appeal to this court. In its appeal, the County does not contest any of the foregoing COLs, but argues that the Tax Appeal Court (1) exceeded its jurisdiction when it lowered the building assessments below the valuations claimed by the Taxpayer in its notices of appeal to the Tax Appeal Court and (2) erred when it set the assessment values of the buildings at levels that did not reflect their fair market values.

## II. DISCUSSION

The County has not challenged the Tax Appeal Court's FOFs and COLs establishing that the County's assessments of the Subject Property lacked "uniformity and equality" in violation of HRS chapter 232 and violated the equal protection clauses of the United States and Hawai'i constitutions. Therefore, in addressing the County's arguments on appeal, we accept those FOFs and COLs as correct.

A. *HRS § 232–13 does not prevent the Tax Appeal Court from lowering an assessment below the valuation stated by the Taxpayer in its notice of appeal.*

■ HRS § 232–13 provides in pertinent part: "The jurisdiction of the tax appeal court is limited to the amount of valuation or taxes, as the case may be, in dispute as shown on the one hand by the amount claimed by the taxpayer or county and on the other hand by the amount of the assessment[.]"

The County essentially contends that "the amount claimed by the taxpayer," as used in this provision, means the valuation stated by the Taxpayer in its notice of appeal, and, therefore, the Tax Appeal Court may not lower the assessment below that value. The Taxpayer, on the other hand, argues that "the amount claimed by the taxpayer" is whatever amount is supported by the evidence presented at trial. We agree with the Taxpayer.

■ We begin with the proposition that our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning.

*State v. Baron,* 80 Hawai'i 107, 113, 905 P.2d 613, 619, *reconsideration granted in part and denied in part,* 80 Hawai'i 187, 907 P.2d 773 (1995) (citation and brackets omitted).

We note that the phrase "the amount claimed by the taxpayer" is not separately defined anywhere in HRS chapter 232, and we cannot say that the phrase itself has a "plain and obvious meaning." However, if the legislature had intended the phrase to mean the amount stated by the taxpayer in its notice of appeal, we can perceive no reason why the legislature would not have simply said so in "plain and unambiguous" language, instead of using the phrase "the amount claimed by the taxpayer." This indicates to us that the phrase is not limited to the amount stated in the notice of appeal.

■ We next consider whether other statutory provisions in HRS chapter 232 provide any insight into the meaning intended by the legislature, for "laws *in pari materia,* or upon the same subject matter, shall be construed with reference to each other." *State v. Toyomura,* 80 Hawai'i 8, 19 n. 6, 904 P.2d 893, 904 n. 6 (1995) (citation, quotation marks, and brackets omitted).

Examination of the statutes that specify the information that must be included in a notice of appeal to the Tax Appeal Court further suggests that the legislature did not intend "the amount claimed by the taxpayer" to be limited to the amount stated by the taxpayer in its notice of appeal. HRS § 232–16 states in pertinent part that

[t]he notice of appeal to the tax appeal court shall be sufficient if it meets the requirements for a notice of appeal to the board of review and may be amended at any time; provided that it sets forth the following additional information, to wit:

A brief description of the property involved in sufficient detail to identify the same and the valuation placed thereon by the assessor.

The requirements for a notice of appeal to a board of review as set forth in HRS § 232–15 are as follows: "The notice of appeal must be in writing and any notice, however informal it may be, identifying the assessment involved in the appeal and stating the grounds of objection to the assessment shall be sufficient."

The requirements for a notice of appeal to the board of review for Maui County parallel the statutory requirements existing prior to 1989: 1) "[t]he notice of appeal must ... stat[e] the valuation claimed by the taxpayer"; and 2) "[a]ny notice of appeal may be amended at any time prior to the board's decision, provided the amendment does not ... lower the valuation claim." *Compare* Maui County Code (MCC) §§ 3.48.655(B) and (C), *with* HRS § 232–15 (1985). Although, in 1989, the legislature specifically deleted these requirements from HRS § 232–15, *see* 1989 Haw.Sess.L. Act 14, § 8 at 41–42, the statutory amendments were intended primarily to effect "housekeeping changes" related to the transfer of the re-

sponsibilities for real property taxation to the counties. *See* Sen.Stand.Comm.Rep. No. 494, in 1989 Senate Journal, at 1000. Thus, reasonable persons could argue that the amendments merely eliminated superfluous provisions already covered by existing county rules and ordinances. *See* Revised Ordinances of Honolulu (ROH) § 8–12.9; Hawai'i County Code § 19–99; MCC § 3.48.655; Rules of the Board of Review of the County of Kaua'i, State of Hawai'i, Relating to Procedure and Forms to be Used § 5A–12.9. Nevertheless, given that the legislature specifically provided that "[t]he notice of appeal to the tax appeal court . . . may be amended at any time," HRS § 232–16, we reject the contention that the legislature intended "the amount claimed by the taxpayer" in HRS § 232–13 to mean the amount stated by the taxpayer in its notice of appeal.

 The County points out that Rule 2(b)(2)(C) of the Rules of the Tax Appeal Court of the State of Hawai'i (RTAC) requires, inter alia, that each taxpayer's notice of appeal state "the assessment valuation placed [on the property] by . . . the taxpayer[.]" However, because the RTAC are made by this court pursuant to its statutory authority, *see* HRS § 232–14, and not by the legislature, the provisions of the RTAC provide little, if any, insight as to the meaning that the legislature intended HRS § 232–13 to have. Moreover, we note that it is "the legislature [that] has the power to establish the subject matter jurisdiction of our state court system," *Sherman v. Sawyer*, 63 Haw. 55, 57, 621 P.2d 346, 348 (1980); procedural rules adopted by this court cannot operate either to expand or limit that jurisdiction. *Cf.* 63 Haw. at 62, 621 P.2d at 351 (holding that "the Rules of Civil Procedure cannot be used to extend the jurisdiction of the circuit court").

The County further argues that, when HRS § 232–13 is read *in pari materia* with HRS § 232–24 [8] "the amount claimed by the taxpayer" must be interpreted as meaning the amount stated by the taxpayer in its notice of appeal. HRS § 232–24 provides:

The tax paid upon the amount of any assessment, *actually in dispute and in excess of that admitted by the taxpayer, and covered by an appeal to the tax appeal court duly taken,* shall, pending the final determination of the appeal, be paid by the director of finance into the "litigated claims fund". If the final determination is in whole or in part in favor of the appealing taxpayer, the director of finance shall repay the taxpayer out of the fund. . . . The balance, if any, of the payment made by the appealing taxpayer, or the whole of the payment, in case the decision is wholly in favor of the assessor, shall, upon the final determination, become a realization under the tax law concerned.

(Emphasis added.) According to the County's argument, this provision demonstrates that the legislature contemplated a "floor" limiting downward adjustments to assessed real property valuations. We do not agree.

It is apparent that the use of a "litigated claims fund" serves two purposes. First, it protects the taxpayer by ensuring that if the taxpayer prevails in its appeal and is entitled to a refund, the County will have the funds available to repay the taxpayer. Second, by segregating the amounts in dispute from those admittedly owed by the taxpayer, the County is better able to engage in financial planning. We acknowledge that these purposes would be best served if the amount "actually in dispute and in excess of that admitted by the taxpayer" were definitively established at an early stage—such as upon the filing of the taxpayer's notice of appeal. However, HRS § 232–24 does not expressly define the amount "admitted by the taxpayer" as the amount stated by the taxpayer in its notice of appeal. Moreover, in light of the fact that the legislature specifically provided in HRS § 232–16 that "[t]he notice of appeal to the tax appeal court . . . may be amended at any time," a holding that taxpayers are bound by the amounts claimed in their initial notices of appeal would be unjustified. Consequently, we are not convinced by the Coun-

---

**8.** MCC § 3.48.670, which is virtually identical to HRS § 232–24, now governs real property taxes paid pending appeal.

ty's argument concerning its ability to engage in financial planning.

Finally, we look to relevant legislative history. *See State v. Toyomura*, 80 Hawai'i at 19, 904 P.2d at 904 ("[T]he courts may resort to extrinsic aids in determining the legislative intent. One avenue is the use of legislative history as an interpretive tool." (Citations and quotation marks omitted.)). We have found nothing in the legislative history of HRS § 232–13 that directly indicated what the legislature intended "the amount claimed by the taxpayer" to mean. However, other legislative history suggests that the legislature would not have intended "the amount claimed by the taxpayer" to be limited to the amount stated in its notice of appeal. *See* Hse.Stand.Comm.Rep. No. 99, in 1939 House Journal, at 396 ("Every effort has been made to prevent situations under which the taxpayer would be 'ruled out' on account of technical niceties in connection with the wording of [its] notice of appeal[.]").

■ For the foregoing reasons, we hold that "the amount claimed by the taxpayer" is not limited to the amount stated by the taxpayer in its notice of appeal. However, because "no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be found which will give force to and preserve all the words of the statute," *Dines v. Pacific Ins. Co.*, 78 Hawai'i 325, 331, 893 P.2d 176, 182, *reconsideration denied*, 78 Hawai'i 474, 896 P.2d 930 (1995), it is clear that HRS § 232–13 does limit the jurisdiction of the Tax Appeal Court in some manner. *See also In re Tax Appeal of Hawaiian Land Co.*, 53 Haw. 45, 54–55, 487 P.2d 1070, 1076–77 (1971) (accepting the Tax Appeal Court's reasoning that HRS § 232–13 limited its jurisdiction to "assessments in dispute"), *appeal dismissed sub nom. Hawaiian Land Co. v. Director of Taxation, State of Hawaii*, 405 U.S. 907, 92 S.Ct. 938, 30 L.Ed.2d 778, *rehearing denied*, 405 U.S. 1048, 92 S.Ct. 1308, 31 L.Ed.2d 591 (1972).

■ "We have stated that the tax appeal court must base its conclusions upon evidence adduced[.]" *City and County of Honolulu v. Steiner*, 73 Haw. 449, 461, 834 P.2d 1302, 1309 (1992) (citation, quotation marks, and ellipsis points omitted). Accordingly, we hold that "the amount claimed by the taxpayer" means whatever amount is supported by the evidence presented to the Tax Appeal Court, and HRS § 232–13 limits the jurisdiction of the Tax Appeal Court to that amount.

B. *Because the assessment of the Subject Property violated the equal protection clauses of the United States and Hawai'i Constitutions, lowering the assessment of the Subject Property to fair market value is not the appropriate remedy.*

■ As a general rule,

[t]he "ultimate purpose of valuation, whether in eminent domain or tax ... proceedings is to arrive at a fair and realistic value of the property involved." Our statutory scheme of real property taxation adopts this principle by identifying "fair market value" as the relevant measure of the property. And we have previously defined "fair market value" as "the value in money of any property for which that property would sell on the open market by a willing seller to a willing buyer."

*Steiner*, 73 Haw. at 454–55, 834 P.2d at 1306 (citing *In re Tax Appeals of Amfac, Inc.*, 65 Haw. 499, 502, 654 P.2d 363, 365–66 (1982)). *See also* MCC § 3.48.290.[9]

■ Based on this principle, the County argues that none of the evidence presented at trial established that the Cost Approach values for the Subject Property as calculated by the County reflected the fair market value of the Subject Property and that the Tax Appeal Court therefore erred when it lowered the assessments of the Subject Property to those values.

---

9. MCC § 3.48.290 provides:

The director of finance shall cause the fair market value of all taxable real property to be determined and annually assessed by the market data and cost approaches to value using appropriate systematic methods suitable for mass valuation of properties for taxation purposes, so selected and applied to obtain, as far as possible, uniform and equalized assessments throughout the county.

■ We agree that there was insufficient evidence to establish that the Cost Approach values for the Subject Property as calculated by the County reflected the fair market value of the Subject Property.[10] That is irrelevant, however, because when an assessment violates the equal protection clauses of the United States and Hawai'i constitutions, simply ensuring that the assessment is set at fair market value does not remedy the violation. *See, e.g., Allegheny Pittsburgh Coal Co. v. County Comm'n of Webster County,* 488 U.S. 336, 346, 109 S.Ct. 633, 639, 102 L.Ed.2d 688 (1989); *Hillsborough v. Cromwell,* 326 U.S. 620, 623, 66 S.Ct. 445, 448, 90 L.Ed. 358 (1946); *Iowa–Des Moines Nat'l Bank v. Bennett,* 284 U.S. 239, 247, 52 S.Ct. 133, 136, 76 L.Ed. 265 (1931); *Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441, 446, 43 S.Ct. 190, 191–92, 67 L.Ed. 340 (1923); *cf. In re Tax Appeal of Hawaiian Flour Mills, Inc.,* 76 Hawai'i 1, 8–9, 868 P.2d 419, 426–27 (1994) (involving tax assessment that violated the commerce clause of the United States Constitution); *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco,* 496 U.S. 18, 39–41, 110 S.Ct. 2238, 2251–53, 110 L.Ed.2d 17 (1990) (same).

Citing *Allegheny Pittsburgh Coal Co., supra,* the Taxpayer contends that "[a] violation of the equal protection laws entitles the taxpayer to the remedy of having the taxpayer's assessments lowered to the level of assessment of other members of the class." In that case, the Court stated that a taxpayer who has suffered from intentional systematic undervaluation by government officials of comparable property

> may not be remitted by the [taxing authority] to the remedy of seeking to have the assessments of the undervalued property raised. The Equal Protection Clause is not satisfied if a [taxing authority] does not itself remove the discrimination, but imposes on [the person] against whom the discrimination has been directed the burden of seeking an upward revision of the taxes of other members of the class.

488 U.S. at 346, 109 S.Ct. at 639 (citations, quotation marks, and brackets omitted).

■ Although the foregoing language suggests that lowering the Taxpayer's assessment would be the only acceptable remedy for a violation of the equal protection clause, the Court's subsequent decision in *McKesson Corp., supra,* makes clear that that is not the case. In *McKesson Corp.,* the Court explained that a refund of taxes would be absolutely required in some cases:

> [If a tax is declared] invalid either because (other than its discriminatory nature) it was beyond the [taxing authority]'s power to impose ... or because the taxpayers were absolutely immune from the tax, ... no corrective action by the [taxing authority] could cure the invalidity of the tax during the contested tax period. The [taxing authority] would have no choice but to "undo" the unlawful deprivation by refunding the tax previously paid under duress, because allowing the [taxing authority] to "collect these unlawful taxes by coercive means and not incur any obligation to pay them back ... would be in contravention of the Fourteenth Amendment."

496 U.S. at 39, 110 S.Ct. at 2251 (quoting *Ward v. Love County Board of Comm'rs,* 253 U.S. 17, 24, 40 S.Ct. 419, 422, 64 L.Ed. 751 (1920)). On the other hand, a taxing authority "found to have imposed an impermissibly discriminatory tax retains flexibility in responding to this determination." *Id.*[11] The taxing authority may correct the impermissible discrimination by: (1) refunding the difference between the tax a taxpayer paid and the tax that it would have paid had it been assessed in the same manner as others in its class; (2) retroactively assessing, "to the extent consistent with other constitutional re-

---

10. We note that none of the Tax Appeal Court's FOFs or COLs state that the Cost Approach values of the Subject Property as calculated by the County reflected the Subject Property's fair market value.

11. Although the impermissible discrimination at issue in *McKesson Corp.* was discrimination in violation of the commerce clause, the Court's citation of *Iowa–Des Moines Nat'l Bank v. Bennett, supra,* in this context makes clear that the same flexibility of remedies is available to the taxing authority when the impermissible discrimination involves violation of the equal protection clause.

strictions," members of the taxpayer's class in the manner that the taxpayer had been assessed;[12] or (3) using a combination of a partial refund to the taxpayer and a partial retroactive assessment of the others within the taxpayer's class. *Id.* at 40–41, 110 S.Ct. at 2251–53; *see also Hawaiian Flour Mills,* 76 Hawai'i at 9, 868 P.2d at 427.

In the instant case, the Tax Appeal Court's judgment simply lowered the assessment of the Subject Property without giving the County the options from which it was entitled to choose. Therefore, the judgment of the Tax Appeal Court must be vacated. On remand, the Tax Appeal Court should enter an order directing the County to either: (1) lower the building assessments of the Subject Property to the Cost Approach values as calculated by the County, and repay the Taxpayer the excess amount of taxes paid, plus interest, as provided in HRS § 232–24; (2) establish uniform assessment practices for comparable properties, apply them retroactively for the tax years involved in this appeal, and collect back taxes where appropriate; or (3) employ an appropriate combination of the two. We caution the County, however, that if it chooses to employ retroactive assessments as part of its chosen remedy, it must "make a good faith effort to administer and enforce the retroactive assessments in a timely manner. While [the County's] efforts to collect back taxes may not be completely successful, *the adequacy of this remedy depends on [the County's] ability to implement it quickly and thoroughly.*" *Hawaiian Flour Mills,* 76 Hawai'i at 9 n. 2, 868 P.2d at 427 n. 2 (citing *McKesson Corp.,* 496 U.S. at 40 n. 23, 110 S.Ct. at 2252 n. 23) (emphasis added).

### III. *CONCLUSION*

For the foregoing reasons, we vacate the Tax Appeal Court's judgment and remand with instructions to issue an order directing the County assessor to either: (1) lower the Taxpayer's assessment to the levels set forth in the judgment vacated by today's opinion; (2) retroactively apply uniform assessment practices and collect back taxes where appropriate; or (3) employ an appropriate combination of the two remedies.

---

12. In *McKesson Corp.,* the Court observed that the retroactive assessment of a tax increase does not necessarily deny due process to those whose taxes are increased, though beyond some temporal point the retroactive imposition of a significant tax burden may be "so harsh and oppressive as to transgress the constitutional limitation," depending on "the nature of the tax and the circumstances in which it is laid."
496 U.S. at 40 n. 23, 110 S.Ct. at 2252 n. 23 (citing, inter alia, *Welch v. Henry,* 305 U.S. 134, 147, 59 S.Ct. 121, 126, 83 L.Ed. 87 *rehearing denied,* 305 U.S. 675, 59 S.Ct. 250, 83 L.Ed. 437 (1938)).