**FERCHE ACQUISITIONS, INC.,**
**Petitioner, Respondent,**

v.

**COUNTY OF BENTON, Relator.**

No. C0–95–2450.

Supreme Court of Minnesota.

July 18, 1996.

Rinke-Noonan, Gerald W. Von Korff, St. Cloud for Relator.

Halls & Byers, P.A., Edward J. Laubach, Jr., St. Cloud, for Respondent.

## OPINION

GARDEBRING, Justice.

This is an appeal by Benton County from a Minnesota Tax Court decision challenging the findings of fact and conclusions of law regarding the valuation of property owned by Ferche Acquisitions, Inc. The dispute between Ferche and the County turns on whether the determination of the property's "highest and best use" should specifically take into account its unique design and construction characteristics, or whether it is more properly valued as a general purpose industrial site. Put another way, the question is whether the unusual design and construction characteristics of the property, which make it especially suitable for a millwork manufacturing business, enhance the property's value or diminish it.

The property consists of two parcels of land, totaling 18.99 acres, which are zoned I–2 (heavy industrial). It is located in Benton County, 15 miles north of St. Cloud near U.S. Highway 10 in Rice, Minnesota. A wholesale millwork manufacturing business was started on the site in the 1950's. Over the last 40 years, the business has grown into a multiple building complex of some 160,000 square feet. It includes milling shops, a manufacturing plant, storage facilities, a boiler house and office space. The buildings have been constructed over time in an unplanned manner; they are non-contiguous, some are open-sided sheds used for storage and they have varying ceiling heights, ranging from 8 to 20 feet. Further, the site layout is irregular in shape, the electric service is "patchwork" at best, and the building columns are irregular in height and number. The central heating system consists of a wood-burning furnace that is fed by the wood byproducts and waste from the millworking processes.

Although the record is unclear as to the exact parties, the property was transferred from one family entity to another in July 1988, in a related-party transaction; thus, the property, while recently sold, was not

exposed to the open real estate market. At the time of the transaction, Ferche was required to estimate the value of the property for income tax purposes. A Certificate of Real Estate Value (CRV) was filed with the county assessor and the Internal Revenue Service, valuing the property at $2,000,000.[1] This figure was used in calculating capital gains and losses.

In 1993, the county assessor estimated the value of the property at $1,930,800 for 1994 tax purposes and the county increased the value in 1994 to $2,067,100 for 1995 taxes.

In evidence presented to the tax court, David Gronik, the Ferche appraiser, determined that the highest and best use of the property was as a single owner/occupant industrial use site and assumed that it would be improper to consider a sale of the property in connection with a sale of the business. He took into account the functional obsolescence [2] of the property, in particular its noncontiguous buildings, varying ceiling and loading dock heights, the unusual central heating and the electrical systems, by addressing similar characteristics, if any, of the comparable sites. Gronik identified no market for the facility as a millwork and thus he relied on "comparable sales" of five general purpose industrial sites in rural areas in valuing the property at $575,000 for 1993 and $635,000 in 1994.

The Benton County appraiser, Charles R. Glassing, agreed the highest and best use of the property was as an industrial site; however, he gave great weight to the property's "value-in-use," apparently attaching significant value to the facility's unusual design and construction features associated with the millwork activity. Glassing relied upon comparable sales that were less similar in size and make-up to the subject property than those used by Gronik, or that were "built-to-

suit" and not subject to the market. Also, many of Glassing's comparable sales were in the St. Cloud area rather than in a rural area similar to Rice. Finally, Glassing took into account only the functional obsolescence of the facility associated with the varying ceiling heights and did not consider the other unusual facility characteristics that Gronik used in determining the valuation of the property.

The tax court considered the testimony of both expert appraisers. It reviewed the three traditional approaches to property valuation, but relied exclusively upon the sales comparison approach, as did both appraisers.[3] The court determined that the highest and best use of the property was as a single owner/occupant industrial site. The tax court found Ferche's appraiser to be more credible and adopted the recommendation of the Ferche appraiser, finding the fair market value of the property to be $575,000 as of January 2, 1993 and $635,000 as of January 2, 1994.

■ Review of tax court decisions is generally limited to determining whether there is sufficient evidence to support the court's decision. *Red Owl Stores, Inc. v. Commissioner of Taxation,* 264 Minn. 1, 5, 117 N.W.2d 401, 405 (1962). The decision must be "sustained upon review unless * * * clearly erroneous * * *." *Northerly Centre Corp. v. Ramsey County,* 311 Minn. 335, 341, 248 N.W.2d 923, 926 (1976). "A finding can be held to be clearly erroneous if the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Id.,* 248 N.W.2d at 927.

■ We start from a premise that real estate "appraisal is an inexact value determi-

---

1. While the CRV itself was never introduced as an exhibit below, we note that the valuation it contained was the subject of testimony in the record.

2. Black's Law Dictionary defines functional obsolescence as "[t]he loss of value due to inherent deficiencies within the property." Black's Law Dictionary 673 (6th ed. 1990).

3. We have said that a single approach may be used to determine the market value of the prop-

erty being appraised. *Equitable Life Assur. Soc. of U.S. v. County of Ramsey,* 530 N.W.2d 544, 553 (Minn.1995). The tax court need only explain the weaknesses of the rejected approaches, as it did here. *See Westling v. County of Mille Lacs,* 512 N.W.2d 863, 866 (Minn.1994). There is no dispute between Ferche and the County about the use of "comparable sales" as the single method of appraisal.

nation." *Lewis & Harris v. County of Hennepin,* 516 N.W.2d 177, 180 (Minn.1994). All market valuation looks first at the highest and best use of the subject property to determine its market value. This determination is made by looking at the market sales for the area, the zoning restrictions and possible changes in use and future purchases of the property, as well as the functional obsolescence of the subject property. The appraiser then determines whether the greatest net return on the property would come from its existing use, or from similar, compatible uses (i.e. any industrial business), or whether it would be best to sell it vacant on the open market. Sidney Z. Searles, *Real Estate Valuation in Condemnation* 8–11 (Practicing Law Institute Transcript Series No. 8, 1970).

■ Based upon the appraiser's determination of the highest and best use, the fair market value can be determined. Fair market value for property assessment purposes is "[t]he measure of compensation * * * which a purchaser willing but not required to buy property would pay to an owner willing but not required to sell it, taking into consideration the highest and best use * * *." *Ramsey County v. Miller,* 316 N.W.2d 917, 919 (Minn.1982); *see also City of St. Paul v. Rein Recreation, Inc.,* 298 N.W.2d 46, 49 (Minn.1980).

■ The County identifies two errors in the tax court's approach to valuation of the Ferche property. The County's principle argument, in sum, is that the decision of the tax court in this matter is inconsistent with our previous approach to valuation of properties with unusual design and construction characteristics. In particular, it relies upon *DeZurik Corp. v. County of Stearns,* 518 N.W.2d 14 (Minn.1994), arguing that the tax court here improperly relied upon a "liquidation sale" or "vacant sale" approach, attaching no value to the unusual design and construction features of this site which make it especially valuable as a millwork.

In *DeZurik,* the tax court was presented with a rural industrial facility with design and construction features making it particularly well suited for use as a foundry and somewhat unsuited for other industrial sites.[4] The tax court considered appraisals made under various valuation methods, but took into account the unusual features of the site by using a high overall depreciation and obsolescence rate in its cost approach analysis, thus accounting for a future change in use. We affirmed, noting that the tax court was proper in rejecting the liquidation sale approach in its consideration of comparable sales where the property's unusual features had been considered in the cost approach. *Id.* at 18.

In addition, we have said that unusual features of property, such as a natural lake to be used in lieu of a power plant cooling tower, should be treated as a "use increment," adding to the value of the property "only to the extent that demand for this use would increase the usual selling price of the land." *Village of Burnsville v. Commissioner of Taxation,* 295 Minn. 504, 508, 202 N.W.2d 653, 657 (1972) (quoting the *Tax Court Decision,* No. 1504, slip op. at 8, 1971 WL 102 (Minn. Tax Ct. October 28, 1971)).

In 1981, we considered a similar issue. *In the Matter of Petitions of Space Center, Inc.,* 302 N.W.2d 17 (Minn.1981). There, in a case involving an unusually configured warehouse, we determined that where there was no evidence of a market for property to be used in precisely the same way, the value of the subject property was inappropriately inflated by the county assessor's reliance upon the property's value to the present owner. *Id.* at 22. We said that "one may consider the present use of the property only to the extent such present use reflects the property's value to buyers in the marketplace." *Id.* at 21.

We conclude that the tax court's determination is not inconsistent with *DeZurik* and

4. The *DeZurik* site included an original set of buildings with 18 additions built over the course of 20 years. There were varying ceiling heights, large pits for foundry furnaces, extra ventilation for the heat generated by the foundry operation and overhead cranes for moving heavy steel. In addition, the office space was larger than the typical manufacturing plant and the plant was built in a residential area creating greater noise and environmental restrictions. *DeZurik,* 518 N.W.2d at 15–16 n. 1.

related cases. Our cases have consistently said that unusual design and construction characteristics may be a proper consideration for an appraiser, but only to the extent that they enhance the actual market value of the property. Whether this issue is characterized as one involving "value-in-use" or "use increment value," it is clear that consideration of unusual design and construction features of the subject property must be supported by evidence that those features make the property more valuable to prospective buyers. In the absence of such evidence here, we conclude that the tax court properly determined the property's highest and best use to be a general purpose industrial site and relied on comparable sales of such sites.

 The County also argues that the tax court should have given greater weight to the value assigned to the property on the CRV, $2,000,000. The County cites *Commissioner of Internal Revenue v. Danielson,* 378 F.2d 771 (3rd Cir.1967), to support its argument that taxpayers are bound by such valuations. However, *Danielson* dealt only with the weight accorded to a CRV in later *federal income tax* filings and the County cites no case to support its assertion here that the CRV is relevant, much less binding, in a dispute over *property tax* valuation.

Furthermore, the tax court's handling of this issue here is consistent with its past practice. In *Foursome Company v. County of Anoka,* No. C0–93–5503, slip op., 1994 WL 81975 (Minn. Tax Ct. March 14, 1994), the tax court gave little weight to the prior estimated value for sale because the property was never exposed to the market and was transferred in a related transaction between surviving partners. *Id.* at 2. In *Westling v. County of Mille Lacs,* Nos. C5–92–341 & C7–92–342, slip op., 1994 WL 232394 (Minn.Tax Ct. May 27, 1994) the tax court placed "little

weight" on the prior estimated value for sale because the transaction was a related-party purchase done two years before the current assessment. *Id.* at 1. This case presents similar facts and we see no reason to disapprove this standard approach.

Therefore, we affirm the tax court's decision that the subject property should be valued at $575,000 for 1993 tax purposes, and $635,000 for 1994 tax purposes.[5]

Affirmed.

5. Ferche also brought two additional issues to this court: 1) the validity of the time extension granted by the tax court to hear a new trial motion; and 2) the awarding of less than 10% of the costs and disbursements requested. As to the first issue, this court finds no merit in the argument, and so does not address it here.

Minn.Stat. § 278.07 allows the awarding of costs and disbursements in a real estate property tax appeal at the discretion of the court. The tax court reviewed the costs and determined that Ferche's costs were unreasonable to the extent that they included the court reporter's time, as well as the cost of the trial transcript. The tax court awarded a $225 hourly fee for the six hours the expert witness testified in court, but disallowed costs and fees for the expert's staff and preparation time. This is reasonable and not an abuse of the court's discretion. Thus, we also affirm the tax court's decision as to the costs and disbursements awarded Ferche.