**FEDERAL RESERVE BANK OF MINNEAPOLIS, Relator,**

v.

**COUNTY OF HENNEPIN, Respondent.**

No. C8–84–935.

Supreme Court of Minnesota.

Aug. 9, 1985.

Ralph W. Peterson, Minneapolis, for relator.

Charles Sweetland, Asst. Co. Atty., Minneapolis, for respondent.

COYNE, Justice.

Relator Federal Reserve Bank of Minneapolis seeks review by certiorari of an order of the tax court, claiming that the assessments of its property for tax years 1981 and 1982 are based on excessive market values. The tax court affirmed the assessor's estimated market value of $36,000,000 as of January 2, 1981 and reduced the estimated market value as of January 2, 1982, from $39,000,000 to $38,250,000. We affirm.

The Federal Reserve Building, constructed in 1973 at a cost of approximately $34,000,000, occupies one entire square block in downtown Minneapolis. The structure was specifically designed to house all the operations of the Federal Reserve Bank serving banks in the Ninth Reserve District. The detailed description of the property set out in connection with our review of the assessments for tax years 1974 through 1978, *Federal Reserve Bank of Minneapolis v. State*, 313 N.W.2d 619, 620–21 (Minn.1981), will not be repeated here. Suffice it to say that the catenary design of the office tower suspended above the open granite-floored plaza is unique.

There are three basic approaches to determining the market value of real estate: (1) the market data approach, an appraisal procedure in which the market value estimate is predicated on prices paid in actual market transactions; (2) the income approach, a procedure which converts anticipated dollar income to be realized by the property owner into a value estimate; and (3) the cost approach, an approach based on the proposition that an informed purchaser would pay no more than the cost of producing a substitute property with the same utility as the subject property. Theoretically, all three approaches lead to the same destination—the market value of the property.

In the earlier litigation the divergence in opinion of market value was the result of differing approaches to appraisal. The assessor considered the bank building to be a "special purpose" building and relied on the cost approach, while the relator's experts treated it as a general office building and based their appraisal primarily on the income approach. We affirmed the tax court's determination that the Federal Reserve Bank was a "special purpose property" with a market value of $29,600,000—the assessor's estimate of market value based solely on reproduction cost. *Federal Reserve Bank*, 313 N.W.2d at 624.

In the present proceedings the relator concedes that the bank building is a "special purpose building," and relator's expert has calculated values on the cost approach. So also has the assessor. Relator's expert estimated the market value of the property at $31,000,000 for 1981 and $32,000,000 for 1982. The assessor was of the opinion that the value of the property was $45,400,000 for 1981 and $46,900,000 for 1982. The parties had stipulated to a land value of $2,722,000. The divergence in opinion of market value was the result of differing types of cost approach. Relator's expert calculated values using a replacement cost approach, a reproduction cost approach, and what he called a comparative cost approach, but his final opinion of market value was based solely on the values developed in his replacement cost approach. Replacement cost is the cost of construction at current prices of a structure having utility equivalent to the subject building but built with modern materials and according to current standards, design and layout. According to relator's expert, although the replacement cost approach he employed replaced the functional utility of the subject building with all superadequacies removed, all inherent incurable functional inadequacies relating to shape, size and configuration were retained. Thus, the replacement cost approach did not eliminate the necessi-

ty to measure functional obsolescence. In his calculations of market value, however, relator's appraiser characterized the functional obsolescence of the replacement building as minimal and made no deduction for functional obsolescence. The assessor, on the other hand, relied entirely on a reproduction cost approach—that is, the cost of construction at current prices of an exact duplicate or replica using the same materials, construction standards, design, layout and quality of workmanship, embodying all the deficiencies, superadequacies and obsolescence of the subject building. In his estimate of market value the assessor relied primarily on the updated historical cost of replication, but he also figured the reproduction cost by the Marshall-Swift calculator method.

The tax court found as fact that the actual market value of the Federal Reserve Bank Building was $43,000,000 on January 2, 1981 and $45,000,000 on January 2, 1982, and that commercial property in the City of Minneapolis was systematically assessed at 85% of market value. Applying that ratio to market value, the tax court found final equalized values of $36,550,000 for 1981 and $38,250,000 for 1982. The tax court then affirmed the assessor's lower estimated market value for 1981, $36,000,000, and reduced the assessor's estimated market value from $39,000,000 to $38,250,000.

■ The relator complains that the tax court erred in adopting a valuation based on the updated historical cost of reproduction of the subject building rather than the replacement cost valuation propounded by relator's expert witness, and in crediting the assessor's obsolescence calculations. The state counters with the proposition that not only precedent, *In re McCannel,* 301 N.W.2d 910 (Minn.1980), but res judicata, *Federal Reserve Bank,* 313 N.W.2d at 619 and even *State v. Federal Reserve Bank of Minneapolis,* 25 F.Supp. 14, 18 (D.Minn.1938), require application of the reproduction cost approach. We agree with the tax court that they do not. At issue in these three cases was the viability of a market value based exclusively on the

cost approach as opposed to the generally accepted amalgam of market data or comparable sales, income and cost approaches. In the *McCannel* and *Federal Reserve Bank* cases we held that it was not error to use a single-emphasis approach in appraising a special purpose building. *In re McCannel,* 301 N.W.2d at 924; *Federal Reserve Bank,* 313 N.W.2d at 624. Although the single approach utilized in both cases was the cost approach—frequently the only relevant approach to special use property—we had no occasion in either case to distinguish among the variant methods of determining cost.

■ Neither was it imperative that the tax court base its market value calculations on the replacement cost on which relator's appraiser relied. Both the assessor and relator's expert were experienced, well-qualified appraisers. The assessor testified that although the calculator method was the generally accepted method for determining reproduction costs, he regarded a trended or updated historical cost more dependable in this case because of the unique characteristics of the subject building. Despite his reliance on replacement cost analysis as the basis for his opinion of market value, relator's expert arrived at rather similar market values in his calculations under the reproduction cost method and when using a cost comparable method. Since his estimated cost of reproduction before deduction of accrued depreciation is only about 4% less than the assessor's, it seems apparent that the wide disparity in these experts' opinions of market value is traceable not to different methods of cost analysis but to a fundamental difference of opinion regarding the amount of functional and economic obsolescence which must be considered. Relator's expert deducted more than $20,000,000 for functional obsolescence; the assessor deducted $11,000,000. Apparently, the relator's expert regards the unique design and quality materials, such as the granite used in the office tower and plaza, as "superadequacies" which add to the cost of reproduction while adding nothing to market value. The tax

court found the assessor's allowance for obsolescence, a matter of peculiarly subjective judgment, the more persuasive. We cannot say the tax court's acceptance of the assessor's position on obsolescence was clearly erroneous. Nor does the tax court's declination to adopt the exact market values proposed by either of the expert appraisers constitute error. The value opinions of experts are merely advisory—evidence to be considered with the other evidence in the case—and the finder of fact is not concluded by them. *LaValle v. Aqualand Pool Co., Inc.*, 257 N.W.2d 324, 328 (Minn.1977).

Affirmed.