LEWIS & HARRIS, a Partnership,
Petitioner, Relator,

v.

COUNTY OF HENNEPIN, Respondent.

No. C0–93–1195.

Supreme Court of Minnesota.

May 13, 1994.

Thomas R. Wilhelmy, James E. Dorsey, Fredrikson & Byron, P.A., Minneapolis, for relator.

Michael O. Freeman, Hennepin County Atty., Mark Kapter Maher, Asst. County Atty., Minneapolis, for respondent.

## OPINION

COYNE, Justice.

Lewis & Harris, a partnership, challenged the 1990 assessed valuation of the partnership's commercial property at 4100 West 76th Street in Edina. The Hennepin County assessor's valuation was $1,170,000. The tax court declared the fair market value of the property was $1,150,000 and ordered the Hennepin County books and records changed to reflect that conclusion. Lewis & Harris moved for amended findings and conclusions or a new trial and, following denial of the post-trial motions, brought this appeal.

In September 1987 the petitioner partnership composed of Terry Lewis and James S. Harris, III, two nationally known, Minneapolis-based music producers, purchased the subject property for $800,000 less an allowance of approximately $10,000 for roof repair. The one story structure, built as an office/warehouse in 1966, was being used as an office furniture showroom at the time of sale. Messrs. Harris and Lewis are also the sole shareholders of the production company, Flyte Tyme Productions, Inc. After acquiring the property, the partnership leased it to Flyte Tyme, which spent about $384,000 on leasehold improvements. Four studios were built, each with an adjacent control room. The other improvements comprised a copy and editing room, a kitchen, two lounges, restrooms, storage rooms and a refurbished office. Recorded performances take place in the studios, which are also called "isolation booths", while the engineer and producer oversee the recording process from the control room. With this renovated building, the Flyte Tyme Productions facility is regarded as a "world class" recording studio.

Essentially, the valuation dispute boils down to a difference of opinion among various appraisers. The partnership based its position primarily on the valuation prepared by Gary Battuello, a partner in a real estate appraisal and consulting firm, and on the method he employed in his appraisal. The county, on the other hand, relied chiefly on the value fixed by Moreau Sankey, an appraiser employed in the office of the City of Edina Assessor.

This court has on various occasions recognized the three basic approaches to determining the market value of real estate:

1. Market data—an appraisal based on prices paid in actual market transactions involving comparable properties;
2. Income—a value estimate predicated on the capitalization of the rental income which a lease could be expected to produce;
3. Cost—a valuation founded on the proposition that an informed buyer would pay no more for the property than the cost of constructing new property having the same utility as the subject property.

See, e.g., Federal Reserve Bank of Minneapolis v. County of Hennepin, 372 N.W.2d 699, 700 (Minn.1985). The partnership urges recognition of the "superiority of the market approach" recommended by Mr. Battuello. Having concluded that the highest and best use of the Lewis & Harris property was use as an office/warehouse, Battuello testified that four nearby office and warehouse buildings had been sold for prices ranging from $24.69 to $41.81 per square foot. He then testified to the 1980s market price of five production facilities, whose highest and best use he described as media production studios: a studio at 25th Street and 27th Avenue, $32.33 per square foot; a studio at 2543 Nicollet Avenue, $31.60 per square foot; Flyte Tyme's former studio at 4330 Nicollet, $42.65 per square foot; a video production facility in Edina, next door to the subject property, $56.60 per square foot; and KTCA's former video studios on Como Avenue in St. Paul, $21.77 per square foot. After adjusting for the differing times of sale and variations in buildings and locations, Mr. Battuello concluded that the market value of

these properties, which he considered comparable to the subject property, was slightly under $39.00 per square foot in January 1990. It was Mr. Battuello's opinion that the market does not recognize any measurable contribution to value because of the sound recording improvement. Mr. Battuello then estimated the market value of the Lewis & Harris building at $40.00 per square foot, yielding an overall value of $670,000.

Based on a market value of $3 to $4 per square foot for the land and a replacement cost of $40 per square foot for a Class C distribution warehouse, Mr. Battuello's cost approach estimate as of January 1990, after considering depreciation, was $760,000.

Using a capitalization rate of 10.5 percent, Mr. Battuello's income approach valuation was $530,000. He discounted the reliability of the income method because properties of the kind at issue are not often financed by investors, and he relied primarily on comparable sales to arrive at his final estimate of $670,000 as of January 1990.

The county's appraiser, on the other hand, relied most heavily on the cost approach, estimated the depreciated cost of the building at $892,124 and the land value at $450,-000, and gave it as his judgment that the property had a total market value of $1,300,-000 on January 2, 1990.

Mr. Sankey determined the land value by market data approach with consideration given to three sales of vacant land. Mr. Sankey gave the greatest weight to the 1987 sale of a 90+ acre parcel at 76th and France Avenue, about one block east of the subject property. Although he discussed three sales of recording studios and the sale of the video studio adjacent to the subject property, Mr. Sankey concluded that the sales of the studios at 4330 and 2543 Nicollet and at 2501 27th Avenue either were not sales of comparable properties or were not arms-length transactions which reflected actual market value. In his appraisal report Mr. Sankey pointed out that there are more than 40 recording studios listed in the telephone directory but that a drive-by inspection convinced him that they were not comparable. He thought his observation was supported by the buyer of the studio at 2543 Nicollet Avenue, who told

Sankey that there were only three top quality recording studios in the area—Prince's Paisley Park, Flyte Tyme and his own studio—and that each of the three were involved in different facets of the recording industry. Because Mr. Sankey was of the opinion that only the sale of the next door video studio could be considered a comparable sale, he gave his market data valuation of $1,070,000 only nominal weight.

Because Messrs. Lewis and Harris are both the only partners of the partnership which is the owner-lessor of the property and the sole shareholders of the tenant production company and because the few recording studio leases in existence are usually between related parties, Mr. Sankey deemed any information about rental income too unreliable to permit development of a market value based on an income approach.

Because of the absence of market data and of reliable income data and because of the high degree of specialization in the recording industry, Mr. Sankey was of the opinion that the subject property is a special purpose property. In conclusion, Mr. Sankey gave the depreciated replacement cost approach the greatest weight with some consideration for the one sale of comparable property—the next door video studio—and arrived at a value of $1,300,000.

The tax court judge recognized that market data approach is ordinarily the preferable approach to the valuation of owner-occupied properties, but she accorded market data little weight in this case. Judge Doar considered the highest and best use of the property on the assessment date was as an office and recording studio, and, therefore, disregarded office/warehouse sales. She rejected Mr. Battuello's analysis of the sale of the next-door video production studio as insufficient to support his conclusion that the market does not recognize a measurable contribution to value by the sound recording studios. She agreed with Mr. Sankey that only one of the three recording studio sales could be regarded as comparable—the studio vacated by Flyte Tyme when it moved to the subject property.

Accordingly, valuation based on market data could be derived from only a single sale. Because of this very limited market data and almost non-existent data concerning income generated by arms-length lease arrangement, Judge Doar regarded the cost approach as the most reliable.

Rejecting the partnership's contention that the recording studios are equipment, not real estate, Judge Doar found that the studios are integrated with and permanently affixed to the building and are, therefore, part of the real estate.

Based on Mr. Sankey's depreciated replacement cost as of January 2, 1990, together with the land value estimates presented by both appraisers, Judge Doar arrived at a depreciated replacement cost of $1,200,000. Giving some, but minimal, weight to the value based on market data, the tax court declared the value of the property on January 2, 1990 to be $1,150,000.

█ Because of the continual rapid change in recording technology, it is no doubt accurate to say that the useful life of the recording studios is somewhat shorter than that of the building to which they are affixed. That it is advantageous for income tax purposes to depreciate them as equipment does not alter their essential character. They are affixed to and integrated with the building. They are leasehold improvements which will stay with the building and become the property of the lessor on expiration of the lease term, just as the studios were sold as a part of the real property in each recording studio sale included in the market data used here. The tax court properly included the studios in the estimated market value of the subject property.

█ With respect to the propriety of placing greater weight on the replacement cost approach, according the market data approach minimal weight, and of considering the income approach not at all helpful, we note that, at best, appraisal is an inexact value determination. It must be conceded, we believe, that an appraisal is an estimate of value. That is the reason for the development of three approaches to value. Viewing value from three different perspectives may help the appraiser arrive at an estimate closer to actual market value than if the property were viewed from a single perspective. Whatever weight priority may usually attach to each approach, the priority and quantum of reliance depends on the facts of each case. It seems to us that in this case the market data approach left a good deal to be desired and that the tax court cannot be faulted for giving it minimal weight while relying primarily on the replacement cost approach.

Affirmed.