**MARQUETTE BANK NATIONAL ASSOCIATION, Respondent,**

v.

**COUNTY OF HENNEPIN, Relator.**

No. C8–98–1660.

Supreme Court of Minnesota.

March 4, 1999.

Amy J. Klobuchar, Hennepin County Attorney, Paul R. Jennings, Assistant County Attorney, Minneapolis, for relator.

Fredrikson & Byron, P.A., Thomas R. Wilhelmy, Laurie J. Miller, Minneapolis, for respondent.

## OPINION

RUSSELL A. ANDERSON, J.

Respondent, Marquette Bank National Association, challenged the 1994–1996 property tax assessments of one of its branch-bank locations, known as Marquette Bank–Brookdale. The Minnesota Tax Court determined that the market value of the subject property was $1,110,000 for all three years. By writ of certiorari, relator, Hennepin County, seeks review of the tax court's decisions denying its motions for either amended findings or a new trial. Relator argues that (1) the tax court improperly considered a value-in-use appraisal offered by the respondent's expert appraiser; (2) the evidence as a whole does not support the tax court's decision on the subject property's market value; and (3) certain evidentiary rulings by the tax court denied relator of its right to a fair trial. We affirm.

The subject property is located in the City of Brooklyn Center along Brooklyn Boulevard, near the Brookdale Shopping Center. The property includes a single tenant, owner-occupied building of 17,920 square feet (including a partial basement). The bank has one automatic teller machine outside the building and no longer has any drive-thru lanes. Drive-thru lanes are at a separate nearby location. The original bank structure, built in 1961–62, underwent structural improvements in 1991 costing approximately

$1,000,000; the renovations added 5,770 square feet to the building.

The City of Brooklyn Center assessed the subject property's market value as of January 2, 1994 and January 2, 1995 at $1,518,300, and assessed the property's market value as of January 2, 1996 at $1,576,000. Respondent challenged these assessments and the 1995–1997 property taxes based on them. After the tax court consolidated these petitions, a trial was held on the matter in October 1997.

In March 1998, the tax court issued its findings of fact, conclusions of law, and order for judgment. The tax court determined that the market value of the property for all three years in question was $1,110,000, a reduction of more than $400,000 per year. The tax court subsequently denied relator's motions seeking either amended findings or a new trial.

On appeal, relator again raises numerous challenges to the tax court's factual findings, legal conclusions, and evidentiary rulings, all of which were unsuccessfully raised in relator's post-trial motions for relief. We now address these claims in turn.

## I.

▬ Relator argues the tax court erroneously accepted a "value-in-use" appraisal offered by respondent's appraisal expert, Ellen Herman. Determining whether the tax court improperly assessed real property by focusing on the property's "value-in-use" to its present owner is a question of law. *See American Express Fin. Advisors, Inc. v. County of Carver,* 573 N.W.2d 651, 660 (Minn.1998) (holding tax court "erred as a matter of law in determining the value of [subject property] according to its value-in-use"). We review the tax court's legal decisions *de novo. See Northwestern Nat'l Life Ins. Co. v. County of Hennepin,* 572 N.W.2d 51, 52 (Minn.1997).

▬ Real property must be assessed for tax purposes at its market value. *See* Minn. Stat. § 273.11, subd. 1 (1998). A fair market value assessment considers the value a property would sell for in a sale from one not required to sell to one not required to buy.

*See DeZurik Corp. v. County of Stearns,* 518 N.W.2d 14, 16 (Minn.1994). A value-in-use assessment, on the other hand, considers the property's value to its present owner. *See American Express Fin. Advisors,* 573 N.W.2d at 659. Assessors may consider a property's value-in-use only to the extent that such present use reflects the property's value to buyers in the marketplace. *See id.*

The prohibition against reliance on value-in-use assessments arose as a means of protecting property owners, by preventing assessments from over-valuing a property by emphasizing a property's intrinsic value to its owner. Precluding appraisers from focusing on a property's value-in-use "is designed to reduce the harshness of applying 'intrinsic use' values to an obsolete building." *Federal Reserve Bank v. State,* 313 N.W.2d 619, 623 (Minn.1981) (discussing differences between special purpose property and value-in-use doctrines). For example, in *American Express Fin. Advisors,* we held that the tax court over-valued a training facility by focusing on the unique value of the facility to the owner, rather than considering "the perspective of a typical purchaser." 573 N.W.2d at 660. A property's intrinsic value to its owner can generally be considered only if it is the sort of highly atypical property used for "unique functions" or featuring "distinctive, specially-designed structural details" that meets the definition of "special purpose property." *Federal Reserve Bank,* 313 N.W.2d at 622. Neither side asserts the subject property meets that definition.

Relator alleges the tax court erred by adopting some of the findings offered by respondent's appraisal expert, Ellen Herman, who testified that the subject property's value was diminished because its physical attributes do not correspond with the smaller, less elaborate branch-bank designs preferred by many banks today. Relator argues that this led the tax court to improperly concentrate on the subject property's potential "value-in-use" to that portion of the market that preferred smaller, less ornate branch bank facilities, rather than considering the bank's value in the overall marketplace.

During her testimony, Herman emphasized that she was offering a market appraisal, and not considering the property's value-in-use. Herman's appraisal found that certain features of the subject property clash with general market preferences desired by bank purchasers or lessees. Surely, part of an effective appraisal would involve looking at the attributes generally desired by market purchasers or lessees, and then comparing that profile with the subject property. Even if relator could point to banks with different real estate needs, that would not negate the importance of the fact that a significant percentage of potential purchasers consider the subject property undesirable, thereby diminishing its market value.

The tax court's adoption of Herman's opinion that the subject property failed to correspond with the attributes sought by the majority of banks today was simply an attempt to determine the property's value to the typical purchaser, rather than an attempt to consider the subject property's intrinsic value to the respondent. *See American Express Fin. Advisors,* 573 N.W.2d at 660 (stating tax court should "analyze the data from the perspective of a typical purchaser"). In short, relator's value-in-use argument is without merit.

## II.

■ Next, relator argues that the tax court's decision to lower the subject property's value was not supported by the evidence as a whole. We will sustain the tax court's valuation of property for tax purposes unless the tax court's decision is clearly erroneous in the sense that the evidence as a whole does not reasonably support the decision. *See Harold Chevrolet, Inc. v. County of Hennepin,* 526 N.W.2d 54, 57 (Minn.1995). Because property assessment is an inexact science, we defer to the tax court's decisions unless the tax court has clearly overvalued or undervalued the property, or has completely failed to explain its reasoning. *See id.* at 58. Before we will reverse a tax court decision valuing property, we must be "left with a definite and firm conviction that a mistake has been committed." *Evans v. County of Hennepin,* 548 N.W.2d 277, 278 (Minn.1996).

### A. Sufficiency of the Evidence

■ Relator raises numerous factual issues in its challenge to the sufficiency of the evidence. Relator is particularly troubled by the fact that the tax court determined the subject property's value at $1,110,000, despite the fact that the subject property underwent a $1,000,000 facelift in 1991. Our review of the record indicates the tax court was presented with ample evidence to justify its decision.

Respondent's appraisal expert, Herman, testified at trial that the price paid by respondent for the subject property's 1991 renovation would not determine its market value to purchasers in 1994–96. Relator's appraisal expert, James Atchinson, conceded that the costs of the building's improvement would not necessarily be captured in a higher market value.

Herman noted that the property suffered from "extreme functional obsolescence." Greater customer demand for electronic banking has forced banks to centralize operations and reduce overhead at branch locations. Herman testified her consultations with bank architects revealed that banks now prefer smaller, less ornate buildings than the subject property. According to Herman, the subject property's marketability, and, thus, its fair market value, was diminished by its excess ornamentation, unnecessary basement and ground floor space, and lack of a drive-thru lane. Herman also cited the decline of the Brookdale-area economy as another important factor that decreased the subject property's value.

Herman emphasized that her appraisal did not consider the subject property's particular value to respondent, noting that whatever rationale respondent might have had for expanding the property would not be relevant for purposes of determining the property's market value. Still, relator pressed Herman to explain why the $1,000,000 expansion to the bank property undertaken in 1991 did not have a greater positive effect on the property's present market value. Herman testified that, in her view, the decision to expand the bank in 1991 was made during a period of transition within the banking indus-

try, and that respondent appeared to have made its decision to expand the bank with "one foot in the past." Moreover, prior tax court decisions support the court's finding that bank facilities can significantly diminish in value due to functional obsolescence. *See Security Bank Minn. v. County of Mower,* No. C2–95–452, 1996 WL 138106 (Minn.Tax, Mar.25, 1996); *First Bank Central, Nat'l Ass'n v. County of Douglas,* No. C8–93–377, 1994 WL 329525 (Minn.Tax, July 6, 1994).

## B. Consideration of Income Approach

 Relator also argues the tax court clearly erred when it decided to "place little weight upon the income approach in this case." We recognize three traditional approaches to determining the market value of real estate:

> 1) the market comparison, based on the prices paid for comparable properties in market transactions; 2) the cost approach, founded on the proposition that an informed buyer would pay no more for the property than the cost of building a new property with the same utility as the subject property; and 3) the income approach, predicated on the capitalization of the income the property is expected to generate.

*American Express Fin. Advisors,* 573 N.W.2d at 657. Whenever possible, the tax court should apply at least two approaches in determining market value. *Id.* However, we afford the tax court broad discretion in deciding which valuation approach to use. *See Evans v. County of Hennepin,* 548 N.W.2d at 278; *see also Lewis & Harris v. County of Hennepin,* 516 N.W.2d 177, 180 (Minn.1994) ("Whatever weight priority may usually attach to each approach, the priority and quantum of reliance depends on the facts of each case.").

Both appraisal reports considered the subject property under all three traditional approaches (market comparison, cost, and income). When considering the income approach, respondent's expert, Herman, utilized four rent comparables, and relator's expert, Atchinson, utilized 15 comparables. Only four of the rent comparables considered by the two appraisal experts were greater than 10,000 square feet in size. Of those four, only one had a lease that had been negotiated after 1992.

The tax court decided that nearly all of the rent comparables submitted by both Herman and Atchinson were poor comparisons to the subject property. The tax court then concluded that there was little current market evidence to support the appraisers' estimates of economic rent during the years in question, and thus elected to rely on the market comparison and cost approaches. This decision was consistent with review appraiser Dennis Jabs' critique of the bank comparables used in Atchinson's appraisal report.

Relator's attempt to demonstrate clear error by pointing to these same bank comparables, as well as two other bank properties it located after the trial had already concluded, is not persuasive. While we are aware of the importance of the income approach to valuations of Twin Cities-area commercial properties in general, we are not prepared to conclude, based upon the evidence in the record, that the tax court's exercise of its broad discretion to determine the weight that should be placed on each of the three valuation approaches was clearly erroneous.

## C. Lack of Explanation

 We will not defer to the tax court's decision when the court has "*completely failed*" to explain its reasoning." *Harold Chevrolet,* 526 N.W.2d at 58 (emphasis added). Relator asserts the tax court failed to explain its reasoning for its decision, including why it found Herman's land evaluation "more thoughtful and reasoned." However, the tax court decision includes a memorandum which discusses the evidence presented at trial, reviews all three market valuation methods, addresses relator's "value-in-use" argument, and analyzes the court's final determination of the subject property's value. Relator's assertion that the tax court "completely failed" to explain the reasoning for its decision is not persuasive.

After a thorough review of the record and the evidence presented at trial, we hold that the tax court's valuation decision was not clearly erroneous.

### III.

A tax court's decision whether to admit or exclude evidence will not be disturbed absent legal error or an abuse of discretion. *See TMG Life Ins. Co. v. County of Goodhue,* 540 N.W.2d 848, 851 (Minn. 1995). Even if the tax court inappropriately excluded evidence, the evidentiary ruling must be shown to have materially prejudiced the appealing party. *See Northwestern Nat'l Life Ins. Co.,* 572 N.W.2d at 55.

### A. Pohlad Subpoena

Relator argues that the tax court should have enforced the subpoena it issued for James Pohlad. Relator maintains that since Pohlad was on the board of directors of Marquette Bank–Brookdale at the time the expansion decision was made, and because the Pohlad family privately holds Marquette Bank, he could have provided expert testimony as to why the bank made the 1991 expansion decision. Not only did Pohlad submit an affidavit stating he had no independent recollection of the matter, but relator's expert, Atchinson, testified at trial that he knew the reason the expansion decision was made. Therefore, the tax court's decision to quash the Pohlad subpoena was not an abuse of discretion, nor did it have a prejudicial effect on relator.

### B. Subpoena for Atchinson's Materials

Relator asserts that the tax court unfairly enforced respondent's broad document request, which required relator to spend critical time before trial compiling all the materials relied upon by Atchinson when he prepared his appraisal report. Relator asserts this constituted an onerous burden, an "irregularity" that deprived relator of its right to a fair trial. *See* Minn. R. Civ. P. 59.01(a) (listing grounds for new trial).

In fact, the tax court did not enforce the subpoena, but instead noted that the failure of Atchinson to produce the materials he relied upon in making his appraisal report would reflect upon his credibility as a witness. The request for the documents Atchinson relied upon in his report was not the sort of irregularity that denied relator a fair trial.

### C. Review Appraisal

The exact nature of relator's argument regarding review appraiser Dennis Jabs' testimony is unclear. It appears relator is arguing that respondent unfairly presented an extra appraisal report by disguising it as a review of relator's appraisal.

Jabs testified that he was not offering his own appraisal, but instead critiquing the appraisal offered by Atchinson. Indeed, Jabs did not conduct his own appraisal, or submit a proposed market value for the property. Furthermore, the Uniform Standards of Professional Appraisal Practice (USPAP) provide for review appraisals. *Unif. Standards For Prof'l Appraisal Practice,* Standard 3 (Appraisal Found.1997). Therefore, it is not clear from relator's argument how the tax court's decision constituted error or denied relator a fair trial.

In summary, after a careful review of relator's claims, we uphold the tax court's decision.

Affirmed.