**BERRY & CO., INC., Relator,**

v.

**COUNTY OF HENNEPIN, Respondent.**

No. A11–0399.

Supreme Court of Minnesota.

Aug. 24, 2011.

William R. Skolnick, Amy D. Joyce, Skolnick & Shiff, P.A., Minneapolis, MN, for relator.

Michael O. Freeman, Hennepin County Attorney, Michael Bernard, Assistant County Attorney, Minneapolis, MN, for respondent.

## OPINION

GILDEA, Chief Justice.

Following a trial, the Minnesota Tax Court determined the value for property tax purposes of relator's property in Wayzata, Minnesota. Relator, Berry and Co., Inc. ("Berry"), appeals to our court, claiming that the tax court erred in determining the highest and best use for the property and in valuing the property. We affirm.

Berry contested the 2007 and 2008 assessed values of the subject property, which is located at 253 Lake Street East, Wayzata, Minnesota. The subject property totals 53,227 square feet. There are three buildings on the subject property, but both Berry and respondent Hennepin County agree that the buildings add no value to the property. The subject property is classified under city ordinance as commercial and zoned as C–4A, Limited Central Business District.

The County assessed property taxes on the subject property based on its conclusion that the property had an estimated market value of $2,540,000 as of January 2, 2007, and $2,650,000 as of January 2, 2008. Berry petitioned the tax court for relief from the County's property tax assessment. At trial, Berry and the County each offered expert appraiser testimony as to the estimated market value of the property. Both appraisers used the market sales

comparison approach to value the subject property. This approach requires the appraiser to compare "the subject property with sales of other comparable properties, adjusting for differences such as location, size and time of sale." *Carson Pirie Scott Co. (Ridgedale) v. Cnty. of Hennepin,* 576 N.W.2d 445, 447 (Minn.1998). The tax court adopted this valuation approach, and the parties agree that this is the proper approach.

Berry's expert used five comparable properties, also located in Wayzata's Limited Central Business District, in his analysis. He concluded that the highest and best use of the subject property was "interim occupancy of the existing buildings, as-is, for the near-term future. Thereafter, the subject improvements would be razed to construct new improvements...." Based on his analysis, Berry's expert valued the subject property at $1,620,000 as of January 2, 2007, and $1,550,000 as of January 2, 2008.

The County's expert used four comparable properties from the Lake Street Market Area[1] in his analysis. He concluded that the highest and best use of the subject property was redevelopment. Based on his analysis, the County's expert valued the subject property at $3,881,000 as of January 2, 2007, and $4,153,000 as of January 2, 2008.

The tax court determined that the highest and best use for the subject property was redevelopment. The tax court also agreed with the County's expert on the valuation question. Specifically, the court concluded that the market value for the subject property as of January 2, 2007, was $3,881,000, and that the value as of January 2, 2008, was $4,153,000. On appeal, Berry challenges the court's highest

and best use determination and its valuation for both 2007 and 2008.

■ Under existing law, the tax court may sustain, reduce, or increase the amount of taxes due on a property. Minn. Stat. § 278.05, subd. 1 (2010); *see also Eden Prairie Mall, L.L.C. v. Cnty. of Hennepin,* 797 N.W.2d 186, 193 (Minn.2011) (concluding that the phrase "increase the amount of taxes due," in section 278.05, subdivision 1, refers to the County's assessment). Because of the tax court's expertise and judgment, the court has discretion to decide whether to adopt either expert's appraisal, and if so, which expert's appraisal to adopt. *See Harold Chevrolet, Inc. v. Cnty. of Hennepin,* 526 N.W.2d 54, 59 (Minn.1995) ("[T]he Tax Court brings its own expertise and judgment to the hearing, and its valuation need not be the same as that of any particular expert as long as it is within permissible limits and has meaningful and adequate evidentiary support." (quoting *Montgomery Ward & Co. v. Cnty. of Hennepin,* 482 N.W.2d 785, 791 (Minn.1992))).

■ Consistent with our standard of review, "[w]e will not disturb the tax court's valuation of property for tax purposes unless the tax court's decision is clearly erroneous, which means the decision is not reasonably supported by the evidence as a whole." *EOP–Nicollet Mall, L.L.C. v. Cnty. of Hennepin,* 723 N.W.2d 270, 284 (Minn.2006) (citation omitted) (internal quotation marks omitted). We consider the tax court's decision to be clearly erroneous only when we are "left with a definite and firm conviction that a mistake has been committed." *Kmart Corp. v. Cnty. of Becker,* 709 N.W.2d 238, 241 (Minn.2006) (citation omitted) (internal

---

1. The Lake Street Market Area is an area ¾ of a mile long, running along the north shore of Wayzata Bay (of Lake Minnetonka), which has a mix of retail, office, and residential properties.

quotation marks omitted). Finally, because of the inexact nature of valuing property, we defer to the tax court's decision unless the tax court has either "clearly overvalued or undervalued the subject property, or has completely failed to explain its reasoning." *Id.* (citation omitted) (internal quotation marks omitted).

## I.

▉▉▉ We turn first to Berry's contention that the tax court erred when it determined that the highest and best use of the subject property was redevelopment. Appraisers must perform a highest and best use analysis when appraising commercial real estate. *See Am. Express Fin. Advisors, Inc. v. Cnty. of Carver,* 573 N.W.2d 651, 659 (Minn.1998). Highest and best use of property is defined as "[t]he reasonably probable and legal use of vacant land or an improved property that is physically possible, appropriately supported, and financially feasible and that results in the highest value." The Appraisal Institute, *The Appraisal of Real Estate* 305 (12th ed.2001).

The tax court concluded that the highest and best use for the property was redevelopment. Berry contends that redevelopment is not the highest and best use of the subject property because zoning restrictions prevent the construction necessary for redevelopment. Specifically, Berry argues that the tax court erred in concluding that the highest and best use of the subject property was redevelopment because there was not an approved planned unit development (PUD) for the property.[2] Rather than redevelopment, Berry contends that the highest and best use for the property is the current use, given the property's existing zoning, which restricts buildings to two stories.

The record contains evidence that there was an approved PUD for the property in effect in 2006 and 2007 that permitted redevelopment. The PUD process began in 2004 when Berry and the adjacent property owner decided to develop their properties jointly. They submitted a PUD to the City of Wayzata to obtain approval to build a three-story building on each property. A PUD was necessary because existing zoning ordinances permitted construction of only two-story buildings with a maximum height of 30 feet. The city council adopted a resolution approving a PUD that allowed the subject property to deviate from C–4A zoning, and permitted construction of a three-story building. The city council approved the PUD subject to 15 conditions, and the mayor signed an ordinance amending the City's zoning ordinance to rezone the subject property from C–4A to a PUD district. The PUD was renewed in 2006 for one year and it expired in September 2007.

Because the PUD expired, Berry contends that the tax court's highest and best use determination was erroneous as a matter of law and not supported by evidence in the record. We disagree with both contentions.

The tax court's highest and best use determination is relevant to each year's valuation decision. With respect to the 2007 valuation, there is evidence in the record to support the tax court's conclusion that a PUD was approved for the subject property. In addition to the resolution passed by the city council and the ordinance signed by the mayor allowing for a PUD on the subject property, the two experts in this case testified that there was a PUD on the subject property during the 2007 assessment. This PUD allowed

---

**2.** A PUD is a type of zoning ordinance that allows a zoning authority flexibility in reviewing projects with unique land-use issues. Wayzata, Minn., Code ch. 801, § 33.1 (2009)

for a three-story building to be constructed on the subject property, and provides support for the tax court's determination that redevelopment was the highest and best use of the property.

Despite this evidence, Berry contends that there was no approved PUD for the subject property because the City placed conditions on the PUD and the approval required Berry to use the adjacent lot as well. The record does not support Berry's contention that the conditions were so onerous as to preclude redevelopment. In addition, the fact that there were conditions placed on the PUD does not render the tax court's finding that the property could be redeveloped clearly erroneous. See EOP–Nicollet Mall, 723 N.W.2d at 284 (noting that a finding is clearly erroneous if it "is not reasonably supported by the evidence as a whole" (citation omitted) (internal quotation marks omitted)). Because the record reflects that there was a PUD on the subject property in 2007 that permitted redevelopment of the property, we hold that the tax court did not clearly err when it determined that the highest and best use of the subject property in 2007 was redevelopment.

■ With respect to the 2008 valuation, the record reflects that there was not an approved PUD for the subject property at the time of the 2008 assessment. But the tax court may consider "[e]vidence of value for uses prohibited by an ordinance" when there is "evidence showing a reasonable probability" that a planned unit development allowing for deviation from existing zoning requirements would be granted in the "near future." Hedberg & Sons Co. v. Cnty. of Hennepin, 305 Minn. 80, 92, 232 N.W.2d 743, 750 (1975) (citation omitted) (internal quotation marks omitted). The tax court has discretion in determining

how much weight to give this type of evidence given that a reasonable probability of a zoning change is a question of fact. See id. at 92–93, 232 N.W.2d at 751 (stating that "in an appropriate case the probability of future zoning modification is a factor to be considered by the trier of fact in considering the question of the market value" of the subject property).

The County presented a significant amount of uncontested evidence sufficient to demonstrate that there was a "reasonable probability" that the subject property would be granted a PUD in the "near future" that would allow for redevelopment of the property. Hedberg, 305 Minn. at 92, 232 N.W.2d at 750. The record reflects that the zoning ordinances in the Lake Street Market Area encouraged PUDs and most properties in the Lake Street Market Area are developed with PUDs. Further, the County's expert testified that, given his experience in commercial real estate and his experience with the City, he had no doubt that Berry would obtain approval from the City if it presented the City with a PUD seeking approval for a three-story building. Given this evidence, we hold that the tax court did not err when it determined that the highest and best use of the subject property in 2008 was redevelopment.

## II.

■ We turn next to Berry's contention that the tax court erred in its valuation of the subject property. The tax court adopted the valuation provided by the County's expert. The tax court's valuation therefore has a basis in the record. But Berry argues that the tax court erred in relying on the County's expert because the County's expert failed to make appropriate adjustments to his comparable sales[3] and

3.  Specifically, Berry argues that the County's

expert (1) failed to make appropriate size

failed to determine accurately the total usable square footage of the property.

Berry presented these arguments to the tax court, and the court's order addresses each one. We have carefully reviewed the record, and our review confirms that there was ample evidence to support the tax court's adoption of the valuation of the subject property provided by the County's expert. Because the tax court's valuation of the subject property finds evidentiary support in the record, we hold that the tax court's valuation was not clearly erroneous.

Affirmed.

MEYER, J., took no part in the consideration or decision of this case.

adjustments, (2) failed to adjust for the shape and slope of comparable properties that had more favorable street frontage and less depth than the subject property, (3) failed to adjust for soil correction costs even though the subject property contained organic soils and potential contaminants, (4) used incorrect data for his appreciation adjustments, (5) failed to adjust for costs of razing existing buildings, and (6) failed to adjust for motivated sales.