John K. BECK, Relator,

Carrie L. Beck, Petitioner Below,

v.

COUNTY OF TODD, Respondent.

No. A12–0252.

Supreme Court of Minnesota.

Jan. 16, 2013.

OPINION

ANDERSON, G. BARRY, Justice.

Relator John K. Beck challenged respondent Todd County's assessment of the value of his lakeshore property in Turtle Creek Township. Todd County estimated that the fair market value of the property was $397,400 as of the assessment date of January 2, 2009. Following a trial, the Minnesota Tax Court found that the fair market value of the property on that date was $395,000. On certiorari appeal to our court, Beck challenges the tax court's judgment. He argues, among other things, that the tax court erred by (1) adopting the appraisal of Todd County's expert; (2) rejecting Beck's testimony, as well as the testimony of his wife, Carrie L. Beck, and his expert witness; and (3) not determining separate land and improvement values for the property. Because the tax court completely failed to address—let alone explain—why it rejected the extensive evidence offered by Beck in support of his petition for tax relief, we remand to the tax court to consider Beck's evidence.

I.

John and Carrie Beck own a lakeshore home located in Turtle Creek Township ("the Property"). The Property consists of one parcel and comprises 49,000 square feet (approximately 1.12 acres), including 245 feet of lakeshore frontage on Pine Island Lake. Beck built a 1,965–square-foot house on the Property in 2001. Respondent Todd County assessed taxes on the Property based on its conclusion that the Property had an estimated market val-

John K. Beck & Carrie L. Beck, Woodbury, MN, pro se.

Charles G. Rasmussen, Todd County Attorney, Long Prairie, MN, for respondent.

ue of $397,400 as of January 2, 2009 ("the effective date").[1]

Beck petitioned the tax court for relief from the County's property tax assessment, as permitted under Minn.Stat. § 278.01, subd. 1 (2012). After Beck filed his petition, the County retained Susan Barkalow, a licensed appraiser, to determine the fair market value of the Property for the tax year at issue. At trial, Barkalow testified that she relied on the cost approach and the sales comparison approach to determine the value of the Property. She explained that, in valuing the Property, she used the extraction technique—a method that falls under the umbrella of the cost approach—to determine the value of the bare land.[2] She concluded that the first 150 feet of the lakeshore frontage should be valued at $192,000, and the next 95 feet at $60,800, for a total valuation of $252,800. Barkalow then identified four comparable properties in the northern and eastern areas of Todd County. After adjustments, Barkalow ultimately valued the Property at $395,000.

Beck did not offer a written appraisal report of the Property at trial. Instead, Beck, Carrie Beck, and expert witness Dale Gimbel testified that the value of the Property as of the effective date was significantly less than the County's assessment. Beck testified that the County's assessment of his Property was overstated based on his analysis of ten comparable lakeshore sales in Todd County. Similarly, Carrie Beck, a real estate agent licensed in Minnesota and Wisconsin, testified that the County had overstated the

value of the land. She based her conclusion on general market trends in the Todd County real estate market during the relevant time frame and her analysis of comparable lakeshore lot sales. And Gimbel, an active real estate agent and former licensed appraiser, examined four comparable properties to ascertain the value of the Property, which he testified was $300,000 as of the effective date.

The tax court adopted Barkalow's appraisal and concluded that the market value of the Property as of the effective date should be decreased from $397,400 to $395,000. Beck appealed by writ of certiorari.

## II.

 Our review of the tax court's property valuation determinations is generally deferential. We recognize that real estate appraisal is an inexact science, and we do "not disturb the tax court's valuation of property for tax purposes unless the tax court's decision is clearly erroneous." *Berry & Co., Inc. v. Cnty. of Hennepin*, 806 N.W.2d 31, 33 (Minn.2011) (citation omitted) (internal quotation marks omitted). The tax court's decision is clearly erroneous only when we are "left with a definite and firm conviction that a mistake has been committed." *Id.* (citation omitted) (internal quotation marks omitted). We are deferential to the tax court's property valuation determination because the "[t]ax [c]ourt brings its own expertise and judgment to the hearing." *Harold Chevrolet, Inc. v. Cnty. of Hennepin*, 526

---

1. Taxes payable on the Property for the tax year at issue were $4,086.

2. Appraisers in rural areas sometimes use the extraction technique because "sales of vacant parcels of land … may occur so seldom that sufficient comparable data is not available." The Appraisal Institute, *The Appraisal of Real Estate* 339 (12th ed.2001). Land, as opposed

to improvements on the land, constitutes the bulk of the value of real property in these areas. *Id.* at 340. Thus, the appraiser "extracts" the value of the land from the sale of an improved property by deducting the depreciated cost of the property's improvements from the total sale price. *Id.* at 339.

N.W.2d 54, 59 (Minn.1995). Indeed, the tax court's "valuation need not be the same as that of any particular expert as long as it is within permissible limits and has meaningful and adequate evidentiary support." *Id.*

We have long held, however, that we will not defer when the tax court has "clearly overvalued or undervalued the property, or has *completely failed to explain its reasoning.*" *Id.* at 58 (emphasis added). And we have cautioned that when the tax court fails to explain its reasoning it "runs the risk of having its determination overturned." *Eden Prairie Mall, LLC v. Cnty. of Hennepin,* 797 N.W.2d 186, 194 (Minn. 2011); *accord 444 Lafayette, LLC v. Cnty. of Ramsey,* 811 N.W.2d 106, 108 (Minn. 2012). In *Eden Prairie Mall,* for example, we did not accept the tax court's valuation determination when it adopted, verbatim, "the proposed calculation of market values presented by the County in its post-trial brief, including several arithmetic errors." 797 N.W.2d at 195. We remanded so the tax court could "adequately explain the reasons" for its valuation determinations and "describe in detail the evidence upon which it relies to support its determinations." *Id.* at 200. We reached a similar conclusion in *444 Lafayette* because "[t]he tax court's verbatim adoption of the County's proposed value determinations and nearly verbatim adoption of the County's arguments" indicated that the tax court had not valued the property by exercising its own independent skill and judgment. 811 N.W.2d at 108.

 In this case, the tax court's complete failure to address John and Carrie Beck's testimony challenging Todd County's assessment of the Property for the tax year at issue warrants such a remand because it "raises doubts over whether the

tax court exercised its own skill and independent judgment." *Eden Prairie Mall,* 797 N.W.2d at 195. To be sure, in a valuation dispute, the tax court typically determines "[t]he weight and credibility of . . . testimony, including that of the expert witnesses," *Alstores Realty, Inc. v. State,* 286 Minn. 343, 353, 176 N.W.2d 112, 118 (1970), because the "[t]he tax court is in the best position to evaluate the credibility of witnesses," *Lewis v. Cnty. of Hennepin,* 623 N.W.2d 258, 264 (Minn.2001); *Manthey v. Comm'r of Revenue,* 468 N.W.2d 548, 550 (Minn.1991). But here, the tax court did not even address, much less analyze, Beck's evidence. Minnesota law expressly provides that "[a]ll . . . parties" to an appeal from any official order of the Commissioner of Revenue "shall have an opportunity to offer evidence and arguments at the hearing." Minn. Stat § 271.06, subd. 6 (2012). In a property valuation dispute, evidence offered in support of a petition for tax relief typically takes the form of a written appraisal, but the property owner is not required to offer such evidence. And in this case, Beck's evidence raises serious doubts about the adequacy of Barkalow's appraisal and the tax court's adoption—essentially verbatim—of her valuation of the Property.

Beck, a licensed CPA, presented the tax court with substantial, perhaps even impressive, evidence in support of his valuation of the Property. He prepared an extensive analysis of ten comparable land sales, concluding that a reasonable range of value for the Property's bare land is approximately $123,000 to $150,000—substantially less than the $252,800 bare land valuation in Barkalow's appraisal. Significantly, Beck's valuation of the Property's bare land is much closer to the County's $175,800 bare land valuation for the tax year at issue.[3] Similarly, Carrie Beck, an experienced real estate agent, conducted

3. While Barkalow's *total* valuation of the

Property is consistent with the County's as-

(1) an analysis of the market for unimproved lakeshore lots in Todd County from 2006 through 2010, (2) an analysis of all improved lakeshore lots in Todd County from 2006 through 2008, and (3) an analysis of the average sale price of unimproved lots on comparable recreational development lakes. All three of Carrie Beck's analyses suggest that the Property was worth less than its assessed value on the disputed effective date.

Moreover, Beck raised several challenges to the assumptions and values underlying Barkalow's appraisal that the tax court did not address. For example, Beck testified that Barkalow's appraisal relied on an arbitrary rule of thumb to value the Property's lakeshore frontage that was contrary to general appraisal practices. Barkalow's appraisal assumed that the primary value of lakeshore property depends on the minimum amount of lakeshore frontage necessary to build a home under applicable zoning law, and that any lakeshore frontage in excess of the minimum is worth 50 percent of the primary value. Beck contends that Barkalow's methodology is contrary to general appraisal practices, and at trial he elicited testimony that supported his position from Charles Pelzer, Todd County's assessor. Pelzer testified—contrary to Barkalow's methodology—that the general appraisal practice is to value lakeshore frontage in smaller increments and with more tiers of values. On the record before us, and without any analysis by the tax court, Beck's effective examination of a key witness who represented the county's interest significantly undercuts the County's valuation argument.

We are also compelled to remand this case for further proceedings because the tax court's stated reason for placing no weight on Gimbel's testimony is incorrect as a matter of law. The tax court "place[d] no weight on Mr. Gimbel's valuation since he was not a licensed appraiser." Minnesota Rule of Evidence 702, however, expressly allows "a witness qualified as an expert by knowledge, skill, experience, training, or education" to testify if the testimony will assist the trier of fact.[4] We have repeatedly emphasized that the most important factor for determining an expert witness's qualifications under Rule 702 is practical experience. *See, e.g., Lundgren v. Eustermann,* 370 N.W.2d 877, 880 (Minn.1985)(stating that practical knowledge or experience, and not mere theoretical expertise, is necessary to establish the qualifications of a physician to testify as an expert witness in a medical malpractice case); *see also* 11 Peter N. Thompson, *Minnesota Practice—Evidence* § 702.03 (4th ed. 2012)("Minnesota appellate decisions indicate that experience is the more important qualification.").

Here, the tax court allowed Gimbel to testify about the value of the Property and the County did not dispute Gimbel's qualifications to furnish expert testimony. Indeed, Gimbel is an active real estate agent with 34 years of experience in the Todd County real estate market. He was a licensed appraiser for 30 years before he allowed his license to lapse in 2008. Without a challenge from the County as to Gimbel's qualifications or his lack of an appraisal license, the mere fact that Gimbel allowed a previously valid license to

---

sessment as of the effective date, she essentially reverses the County's valuation of the underlying land and improvement values. Barkalow pegs the value of the bare land at $252,800 and the value of the improvements at $140,000. By contrast, the County assessed taxes based on its determination that

the bare land was worth $175,800 and the improvements were worth $221,600.

4. The Minnesota Rules of Evidence govern proceedings in the tax court. Minn.Stat. § 271.06, subd. 7 (2012).

lapse, standing alone, is insufficient as a matter of law to reject Gimbel's testimony. *See, e.g., Lundgren,* 370 N.W.2d at 880; 11 Peter N. Thompson, *Minnesota Practice—Evidence* § 702.03 (4th ed.2012). Here, the tax court appears to have confused credentials, which are helpful but not essential, with qualifications, which Gimbel had in abundance. At the very least, the tax court failed to explain why Gimbel's lack of an appraisal license, in light of his extensive experience, rendered his testimony irrelevant.[5]

Given the tax court's complete failure to address and analyze Beck's evidence, we reverse the tax court's decision valuing the Property and remand to allow the tax court to explain adequately the reasoning underlying its valuation determination. It may well be that, on remand, the tax court will affirm its prior valuation. But it also may be the case that the tax court will, after carefully considering the testimony of the property owners and Gimbel, conclude that some other valuation is more appropriate. At a minimum, the property owners—both of whom put substantial time, effort, and energy into their petition and these proceedings—are entitled to know that the tax court considered their opinions about the value of their property and why the tax court chose to reject those opinions.

Reversed and remanded.

WRIGHT, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

5. The tax court also erroneously stated that Gimbel is retired and suggested that Gimbel allowed his appraisal license to lapse because of his retirement. In fact, Gimbel remains active in the Todd County real estate market. He only allowed his appraisal license to lapse in 2008 because of health problems.